**WILMARTH et al. v. REAGAN et al.**
**(No. 335–3700.)**

(Commission of Appeals of Texas, Section B.
June 24, 1922.)

**1. Levees and flood control ⊜⟶11—District court has jurisdiction of case against commissioners of appraisement, alleging fraud of appraisers.**

Under Acts 1918 Fourth Called Sess. c. 44 (Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½–5584½tt), known as the Laney Act, creating the Kaufman County levee improvement district, to put into effect the Conservation Amendment, Const. art. 16, § 59, the action of the appraisers is not so final and conclusive as to prevent the district court from having jurisdiction to determine on its merits an action attacking assessment of benefits and damages for fraud of appraisers.

**2. Levees and flood control ⊜⟶11—Landowners not entitled to attack general plan in delayed suit, but entitled to relief from fraud.**

Under Laney Act (Acts 1918 Fourth Called Sess. c. 44) § 57 (Vernon's Ann. Civ. St. Supp. 1922, art. 5584½ss), fixing the time within which a suit may be instituted to contest the plans of reclamation approved by the state reclamation engineer, in a suit not brought within such time, plaintiffs were in no position to attack the feasibility of the general plan, though entitled to relief from fraud on the part of appraisers and supervisors.

**3. Levees and flood control ⊜⟶5—Quo warranto ⊜⟶8—Levee district's existence and rights can be questioned only in quo warranto by or on behalf of state.**

Under Laney Act (Acts 1918 Fourth Called Sess. c. 44) §§ 6, 7 (Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½bb, 5584½bbb), a levee improvement district is a governmental agency, and a body politic and corporate, and its existence and right to act as such may be questioned only in quo warranto proceedings by or on behalf of the state.

**4. Levees and flood control ⊜⟶34—Bond election not invalid because held by manager alone.**

The mere fact that a levee improvement district's election for issuing bonds was held by the manager alone is not a reason for holding it to be invalid, in view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 3063, 3077.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Suit by I. L. Wilmarth and others against J. C. Reagan and others. From a judgment for the defendants, the plaintiffs appealed to the Court of Appeals, which affirmed the judgment (231 S. W. 445), and plaintiffs bring error. Reversed and remanded for trial on the merits.

Jno. H. Sharp, of Ennis, Earl E. Hurt, of Dallas, and Adair Dyer, of Ennis, for plaintiffs in error.

J. A. Cooley, of Kaufman, and W. P. Dumas, of Dallas, for defendants in error.

POWELL, J. For a partial statement of the nature and result of this cause, we quote as follows from the opinion of the Court of Civil Appeals:

"This was a suit by appellants, I. L. Wilmarth, Frank R. Lewis, W. A. Tucker, A. L. Trail, and T. J. Gilkey, against the Kaufman County Levee Improvement District No. 9 and against J. C. Reagan, J. J. Roddy, and John Garner, as the supervisors, and J. J. Davis, C. C. Ritter, and B. B. Hatley, as the commissioners of appraisement, of said district. Exceptions having been sustained to the plaintiffs' second amended petition, they asked and obtained leave to file a third amended petition. On motion of appellees, the latter petition, when filed, was stricken out, and judgment was rendered that appellants take nothing by their suit. The second amended petition is too long to set out here. It appeared from the allegations therein that the purposes of the suit were as follows:

"I. To annul the order of the commissioners' court of Kaufman county purporting to have been made in conformity to authority conferred by Act April 2, 1918 (General Laws Fourth Called Session, pp. 97 to 117), creating said Kaufman County Levee Improvement District No. 9; or, in the alternative, to rearrange the boundaries thereof so as to exclude therefrom lands belonging to appellants which they alleged, had been wrongfully included therein. The grounds relied on for this relief were alleged to be: (1) That 'sufficient notice' of the hearing resulting in the passing of said order was not given property owners interested. (2) That the boundaries of the district were not sufficiently described and fixed, in that the field notes thereof were incorrect. (3) That lands belonging to plaintiffs which should not have been were included in the district.

"II. To annul the report made by the commissioners of appraisement of the district assessing damages and benefits to lands therein, and to annul an order alleged to have been made by the supervisors of said district approving said report; or, on the alternative, to compel said commissioners of appraisement to reassess said damages and benefits. The ground relied on for this relief was alleged to be that the assessments were discriminatory against appellants in favor of J. C. Reagan, one of the supervisors, and others.

"III. To 'prohibit' the sale of bonds voted to pay for the proposed improvements in said district, and to 'prohibit' the levy of a tax on property in said district to pay such bonds. The ground relied on for this relief was alleged to be that, whereas a manager and two clerks were appointed to hold the bond election, it was held by the manager alone."

The Court of Civil Appeals at Texarkana, in an opinion by Chief Justice Willson, affirmed the judgment of the district court. See 231 S. W. 445. The cause then reached the Supreme Court upon application of plain-

---

⊜⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tiffs below for a writ of error, which was granted.

As already stated, the commissioners' court of Kaufman county, Tex., in compliance with the act of April 2, 1918, known as the Laney Act (Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½–5584½tt), created Kaufman County Levee Improvement District No. 9. The Laney Act itself was passed for the purpose of putting into practical effect the so-called Conservation Amendment to our state Constitution, which the people ratified in 1917, and which then became section 59 of article 16 of that instrument. This Laney Act, in great detail, provides for the creation of these districts and their management thereafter. Their creation is confided to the commissioners' court of the county, subject to a certain kind of approval of the state reclamation engineer. Once created, that court appoints three supervisors of the district, who are given, as the name implies, general supervision of the affairs of the district. The supervisors, in turn, are empowered to appoint three commissioners of appraisement, who are under the duty of inspecting all lands in the district and assessing benefits against that which will be benefited and damages against that which will be damaged by the plans of reclamation. These assessments of benefits and damages are of vast importance, because the expense of the reclamation is borne by taxation, based upon a system of assessed benefits, rather than the customary method of ad valorem.

In the case at bar, the supervisors and appraisers were duly appointed and went about their work in due course. Upon its completion, the latter made up a report, showing their assessments of benefits and damages. As provided by law, a day was set by them to hear protests from the property owners. Upon this hearing, plaintiffs in error presented various objections to the report of these appraisers. They were overruled, and the report made final in so far as they could bring about this result.

Being unable to obtain any relief from these appraisers, plaintiffs in error filed this suit in the district court of Kaufman county. The analysis of the petition in the court below by the Court of Civil Appeals is fairly accurate, except that the allegations of said petition attacking the work of these appraisers, as well as the supervisors, were much more comprehensive than the Court of Civil Appeals indicates. That court says the objection was that the assessments were discriminatory against plaintiffs in error in favor of Supervisor Reagan and others. This allegation was made, as stated by the Court of Civil Appeals, but the second and third amended petitions contained allegation after allegation, charging these appraisers with all kinds of fraud and official misconduct and in effect alleging that everything they did

was actuated by motives of fraud. It will serve no useful purpose to set these allegations out in this opinion. To do so would make the opinion entirely too cumbersome. Suffice it to say that practically every allegation charged conduct on the part of the appraisers which involved fraud. Specific acts were detailed. If the allegations are true, then these supervisors and appraisers conspired together for the purpose of mutual private gain without any regard whatever for the public good, whose servants they were supposed to be. Briefly speaking, if these allegations be sustained, both boards were honeycombed with graft and even bribery, all in fraud of the rights of these plaintiffs in error, who were vitally interested, not only in the taxing of their own property in order to raise the funds of the district, but in the expenditure of such funds for lawful purposes.

[1] We do not, of course, in any wise pass upon the truthfulness of these allegations. The trial court sustained demurrers to all of them and refused to hear evidence. As practically all the pleadings involve fraud and misconduct as aforesaid, we shall now consider whether or not the trial court should have entertained jurisdiction of this case and heard evidence in support of such allegations. Did that court err in deciding the case on demurrers? It is quite evident that the trial court based its decision upon the theory that the district court had no jurisdiction of a case of this kind, and that the action of the appraisers under the Laney Act was "final and conclusive." We think the district court had jurisdiction of this case.

From the very beginning of its existence, our Supreme Court has found a way, under the Constitution and statutes then in force, to open the doors of our district courts as a refuge for those seeking, in various ways, to avoid the injurious effects of fraud attempted to be perpetrated upon them. We shall refer to a few of these authorities, showing the extent of the jurisdiction of the district court under its equity powers.

In the case of Bourgeois v. Mills, 60 Tex. 76, the Supreme Court says:

"The act to regulate the laying out, opening, and classifying and working public roads, etc., approved July 29, 1876, confers upon the commissioners' court full power and jurisdiction over the subject of public roads. This is a special power or jurisdiction confided to that court to be exercised according to its discretion. No provision is made in the act for reviewing its action with respect to that matter. No doubt, however, is entertained as to the power of the district court, through its equitable jurisdiction, to revise the exercise of that discretion where it is clearly shown that it has been grossly abused; or to interfere and prevent an injury where it appears that the commissioners' court had transcended its authority, or was proceeding without authority of law."

The case of Railway Co. v. Dowe, 70 Tex. 1, 6 S. W. 790, was one where the district court, under the Constitution then in force, had no general superintendency or control over justices' courts. Even under those circumstances the Supreme Court announced the law as follows:

"The justice's court has a special and exclusive jurisdiction under the Constitution, independent of all other courts, and no other court can interfere with its proceedings, to grant new trials, or to prevent the enforcement of its judgments, or to review its trials, except as provided by law on appeal; and, where no appeal is allowed, its judgments are final and conclusive, save where it is made to appear that by accident, fraud, mistake, or ignorance such a wrong has been done as would authorize the prevention of the wrong if committed by any other court."

The case of Oden v. Barbee, 103 Tex. 449, 129 S. W. 602, was one seeking an injunction against an election for the organization of Bailey county upon the allegation that the petition for such election was fraudulent; that it contained names of women and children, as well as those not resident at all in the said unorganized county. In that case, speaking of the jurisdiction of the district court, the Supreme Court says:

"But by an amendment to section 8 of article 5 of the Constitution, which was declared adopted September 22, 1891, the following was inserted in that section: 'The district court shall have appellate jurisdiction and general supervisory control over the county commissioners' court, with such exceptions and under such regulations as may be prescribed by law, and shall have general original jurisdiction over all causes of action whatever for which a remedy or jurisdiction is not provided by law or this constitution, and such other jurisdiction, original and appellate, as may be provided by law.' At the time this amendment was adopted there had been numerous decisions by the Supreme Court holding that a citizen of a county had no remedy by which he could resist the removal of a county site, and the district court had recently held that the same rule applied to an election for the organization of a county, namely, that the question was a political and not a judicial one. It seems to us, therefore, that the main object in the amendment in question, first by answering the objection, so often urged, that the district court had no jurisdiction over the commissioners' court, and then by broadly providing that the latter court shall have general original jurisdiction, for which a remedy is not provided by law, was to provide that the district court should have jurisdiction of these cases."

The case of Key v. Key, 167 S. W. 173, was one based upon allegations of fraud in the handling of an estate. The Court of Civil Appeals in that case wrote a very strong opinion and the Supreme Court denied a writ of error. We quote from it, since it reviews so many Supreme Court cases of earlier days. In his opinion Judge Talbot says:

"While the district courts of this state, since the adoption of the Constitution and probate laws of 1876, which left out the words 'original jurisdiction,' have only an appellate jurisdiction and general control over probate courts, as shown by article 5, § 8, of that instrument, yet by this same article and section original jurisdiction and general control over executors, administrators, guardians, and minors, under such regulations as may be prescribed by law, is conferred upon district courts. And in Chevallier v. Wilson, 1 Tex. 160, where the Constitution invested the district courts with original jurisdiction and control over executors and administrators in the same language as does our present Constitution, it is said that this grant of jurisdiction is complete, subject to legislative regulations, and is not impaired because these regulations have not been made. In Long v. Wortham, 4 Tex. 382, and reaffirmed in Giddings v. Steele, 28 Tex. 733, 91 Am. Dec. 336, it was held, under the clause of the Constitution giving original jurisdiction over executors, administrators, etc., that the district court might suspend any executor and appoint a receiver, with power to sue and collect a note given to an executor in his representative capacity. In Dobbin v. Bryan, 5 Tex. 276, it was decided that the district courts have jurisdiction to investigate and arrest a fraudulent combination which might result in destroying the estate or to the injury of those interested in the faithful administration of the estate; that from its organization the probate court, being so limited in its jurisdiction, cannot well investigate the facts constituting the fraud, and that the same difficulty would arise in the investigation of and executing trusts. In Smith v. Smith, 11 Tex. 102, the jurisdiction of the district court to hear and determine a suit by an heir, pending administration in the probate court, to establish the property of the estate, and to obtain a partition and distribution, was upheld, and the court, after stating that it was held in Dobbin v. Bryan, supra, that fraudulent combinations had always been a fruitful source for the exercise of equity jurisdiction, said: 'There can be no doubt but both fraud and trusts would authorize the exercise of original jurisdiction by the district court.' In this case it is further said that in Newson, Guardian, v. Chrisman, 9 Tex. 113, the previous decisions of the Supreme Court were reviewed and sustained upon the grounds of the general equity jurisdiction of the district court, independent of the fifteenth section of the judicial department of the Constitution. In Rogers v. Kennard, 54 Tex. 30, referring to the case of Smith v. Smith, supra, it is said: 'In that case the chancery jurisdiction of the district court was clearly maintainable on the grounds of breach of trust and fraud, and because the probate court was inadequate to grant the appropriate relief.' The facts and circumstances of delay, fraud, and trust, appealing for the exercise of the general equity jurisdiction in the case of Smith v. Smith, were but little, if any, stronger than those alleged in the case at bar, and upon the authority of that and other cases referred to

we think appellee's demurrer to appellants' petition should have been overruled."

For other authorities defining the jurisdiction of the district court as covering cases similar to the one at bar, we refer to the following: Dobbin v. Bryan, 5 Tex. 276; Newsom v. Chrisman, 9 Tex. 113; Smith v. Smith, 11 Tex. 102; Rogers v. Kennard, 54 Tex. 30; McLaughlin v. Smith, 105 Tex. 330, 148 S. W. 289; Tippett v. Gates (Tex. Civ. App.) 223 S. W. 702; Jennings v. Carson (Tex. Civ. App.) 184 S. W. 562; Grayson County v. Harrell (Tex. Civ. App.) 202 S. W. 160; Toledo S. & M. Ry. Co. et al. v. Shafer, 190 Mich. 89, 155 N. W. 712; Hutcheson, et al. v. Storrie, 92 Tex. 685, 51 S. W. 848, 45 L. R. A. 289, 71 Am. St. Rep. 884; Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443; Myles Salt Co., Ltd., v. Board of Commissioners, 239 U. S. 478, 36 Sup. Ct. 204, 60 L. Ed. 392, L. R. A. 1918E, 190.

It will be seen, from above authorities, that the district court unquestionably had jurisdiction of the instant case, unless the so-called Conservation Amendment or the Laney Act aforesaid has changed the situation. Have they done so? We think not. The Conservation Amendment does not refer to the jurisdiction of courts. Nor does it contain any provision which, in the remotest degree, might be held to impliedly repeal section 8 of article 5 of our Constitution defining the jurisdiction of the district courts. We do not think the Conservation Amendment repealed any provision of the Constitution with reference to courts. In this connection, our Supreme Court, in the case of Dallas County Levee District v. Looney, 109 Tex. 326, 207 S. W. 310, in a very able opinion by Chief Justice Phillips, held that this very Conservation Amendment did not repeal subdivisions (a) and (b) of section 52 of article 3 of our Constitution, although the latter related to the same general topic and subject-matter as the former. The court held this amendment was merely cumulative and that "implied repeals are never favored." If the new amendment did not impliedly repeal other provisions of the Constitution bearing upon the same subject-matter, it certainly did not so repeal a provision of the Constitution relating entirely to another and different subject. Upon this point the Court of Civil Appeals, in the case at bar, says:

"By the terms of the act (sections 21–23) it was the duty of the commissioners of appraisement, after viewing the lands in the district, to assess the 'amounts of benefits and damages' to accrue to such lands as a result of the improvements determined upon, to make a report of their findings in those respects, and, at a time and place fixed, after notice to persons concerned, hear and determine objections to the report. It was also the duty of said commissioners of appraisement, after modifying their report so as to make it conform to changes determined upon at such hearing, to make a decree confirming the report as modified. The findings, as so confirmed, it was declared in the act, 'shall [quoting] be final and conclusive.' If the court below, in the face of that declaration, had power in any event to annul the report and order of the commissioners of appraisement, it must have been by force of section 8 of article 5 of the Constitution, which confers on district courts 'general original jurisdiction, over all causes of action whatever for which a remedy or jurisdiction is not provided by law or this Constitution. We do not think a right in the trial court to grant relief in the respects specified can be predicated on the language quoted; for jurisdiction in such cases was provided by law when power to assess benefits and damages to lands in such a district was conferred upon commissioners of appraisement provided for in the act, and a remedy for assessments wrongfully made was provided when owners of lands in the district were given a right to be heard on objections made by them to the assessments."

The Court of Civil Appeals holds that article 5, section 8, of our Constitution is still in force, and that under its terms the district court would have had jurisdiction of this case, but for the fact that the Laney Act provided a remedy "for assessments wrongfully made * * * when owners of land in the district were given a right to be heard on objections made by them to the assessments." With this latter holding of the Court of Civil Appeals, just quoted, we are not in accord. It is true that the act does provide that the appraisers shall hear protests from those affected who are dissatisfied. But we fail to see that this offers any real remedy in a case like the one at bar. Here we are met with allegations of all kinds of fraud on the part of these appraisers. If the allegations are true, there is no reasonable probability that the plaintiffs could have obtained (as they did not) relief from these same appraisers, accused of fraud. For them to have granted relief under those circumstances would have deprived them of their ill-gotten gains and amounted to a public confession of guilt of fraud and even crime. People should not be compelled to seek relief from the very parties who are under fire for such serious misconduct. Complainants should be heard in a court in no wise interested in the result of the litigation. We think these appraisers, in view of these allegations, were not qualified to pass upon the same; that no remedy, in a case of this kind, was provided by the Laney Act; that the district court clearly had jurisdiction.

We do not think the Legislature intended to make the assessments of these appraisers final and conclusive, when tainted with fraud. We cannot believe they view fraud with less horror than the rest of us. We are certain they are anxious to smite it whenever and wherever it rears its head, no matter in what form or however veiled. The Legislature doubtless knew that all the

courts in all the states annul and set aside all acts or contracts, when tainted with fraud. This is the universal rule, so far as we can ascertain. Written contracts cannot be varied as a general rule, but fraud will set them aside. So we think the Legislature intended to make these assessments final and conclusive, as a general rule, but subject to the universal exception which outlaws fraud. Our lawmakers must expressly declare otherwise, before we can think they intended to condone fraud and permit the guilty parties to benefit as a result thereof. Up to this time, it has not so expressed itself and we cannot think it ever will.

Counsel urge us not to delay or obstruct the plans of reclamation by decreeing a trial of this case on its merits. We are in hearty sympathy with the purposes of this amendment and statute. We think the courts should do all they can, in a proper way, to facilitate the enforcement of the act and the prompt progress of the work undertaken thereunder throughout the state. We believe they will do so, and that speedy trials will be had when this act is involved. For instance, we advanced this case. We are fully aware of the vast importance of obviating delays as far as possible. At the same time, we think a little delay in the reclaiming of lands is far preferable to the establishing of a precedent which might forever crucify the right upon a cross of fraud. In view of allegations such as we have here, we would view with alarm a refusal to open the doors of the courts and thereby deny the complainants a right to be heard. The following language of Judge Stayton in the case of Anderson County v. Kennedy, 58 Tex. 622, is expressive of our feelings:

"It would be hard to believe that it was the intention of the Constitution to give to no courts the power to hear and determine a multitude of questions which affect the welfare of the people most vitally, which, however, cannot be exactly measured by dollars and cents or defined by subject matter. Purvis v. Sherrod, 12 Tex. 160. If such be true of the present Constitution, then the declaration in the Bill of Rights that 'all courts shall be open, and every person, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law,' is a mockery."

We are also in complete accord with the views of our Supreme Court in the case of Stockwell v. State, 110 Tex. 550, 221 S. W. 932, 12 A. L. R. 1116, wherein Judge Phillips held that it is always safer to have an adjudication of controversies in the courts. He so held, although, in allowing a trial of that case on its merits, he held ineffective a provision of a statute making the action of a certain official final and conclusive.

It follows, from what has been said, that we think the trial court should have entertained jurisdiction of this case and heard proof in support of all allegations which smacked in any way of fraud. The plaintiffs were entitled to a trial of these issues of fact, and such acts, if any, of the supervisors and appraisers as were found to be tainted with fraud should have been set aside and annulled. What we have said disposes of practically all the pleadings. However, in view of another trial, we shall discuss a few points applicable to certain portions of the pleadings also excepted to in the trial court.

[2] Plaintiffs in error were not in position to attack the feasibility of the general plan of reclamation in the instant case, for it appears that such suit was not instituted within the time fixed therefor in section 57 of the Laney Act (Vernon's Ann. Civ. St. Supp. 1922, art. 5584½ss). Said section reads as follows:

"If the supervisors of any levee improvement district, or any person or corporation whose interests are affected thereby, be dissatisfied with the action of the state reclamation engineer in finally approving or disapproving any plan of reclamation for such district, the district or person or corporation dissatisfied may within fifteen days after such final action, file suit in the district court of the county whose commissioners' court has jurisdiction of the district in question, against the state reclamation engineer, and to which suit the district shall be made a party defendant, if the suit be on behalf of any other complaining person or corporation. The petition shall set forth the cause or causes of objection, and show wherein the interests of the petitioner are injuriously affected by the action of the state reclamation engineer complained of. Process shall issue as in other cases and the case shall have preference of trial in the court wherein it is filed, and upon final hearing the court shall render its judgment and decree approving or disapproving of the plan of reclamation, in whole or in part, as it may find to be equitable and just; and such judgment shall stand for the action of the state reclamation engineer in such matters. There may be an appeal, as in ordinary cases, from the judgment of the trial court, which appeal shall have preference of hearing in the Court of Civil Appeals, the judgment of which in the matter shall be final, and shall stand for the action of the state reclamation engineer in respect to the matters at issue in such suit."

The intention of this section was to permit individuals, as such, as well as others, to contest the plans of reclamation approved by the state reclamation engineer, provided the action be brought within the prescribed time. Every word of this section evidences an intention to have such issue speedily tried in all the courts. This section 57 is the only part of the Laney Act prescribing the method of trial in the courts. It, of itself, does not afford any relief to the plaintiffs in error in their complaint of the action of the appraisers and supervisors, for the latter acts themselves occurred much more than 15 days after the approval of the plan of reclamation by the state engineer. Section 51 of said act (article 5584½qq) merely provides that the district may sue and be sued in the courts.

[3] We are in accord with the Court of Civil Appeals, when it speaks as follows:

"If, however, it should be said that the effect of the provision referred to in section 6 of the statute was not to forbid such review by other courts, the review could not be had at the instance of appellants, but must have been at the instance of the state, or on its behalf. By the terms of the act referred to (section 7) the district, colorably, at least, was 'a governmental agency and a body politic and corporate,' and its existence and right to act as such could be questioned only in quo warranto proceedings prosecuted by or on behalf of the state. Parker v. Drainage District, 148 S. W. 351; Cochran v. Kennon, 161 S. W. 67; Holt v. State, 176 S. W. 743; Minear v. McVea, 185 S. W. 1048; Crabb v. School District, 146 S. W. 528."

A writ of error was denied by the Supreme Court in the case of Parker v. Drainage District, supra. This very holding was also upheld by this section of the Commission of Appeals in case of Harbin Ind. School District v. Denman, 222 S. W. 538.

[4] We agree, also, with the Court of Civil Appeals in its holding as follows:

"It is plain, we think, that the suit was not maintainable so far as it was to 'prohibit' the sale of bonds voted, and to 'prohibit' the levy of a tax to provide a fund to pay the bonds, on the ground that the election at which the bonds were voted was held by the manager appointed to hold it in the absence of clerks appointed to assist in holding it. Conceding that the validity of the election could be questioned otherwise than in a proceeding to contest it (Robertson v. Haynes, 190 S. W. 735; and see Smith v. Reaves, 208 S. W. 545), it is clear the mere fact that it was held by the manager alone would not be a reason for holding it to be invalid (Vernon's Statutes, arts. 3077, 3063; Savage v. Umphries, 118 S. W. 893; 20 C. J. 179)."

In view of what has been said, we recommend that the judgments of the district court and Court of Civil Appeals be reversed, and the cause remanded to the former for a trial upon its merits.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.