## GLENN v. DALLAS COUNTY BOIS D'ARC ISLAND LEVEE DIST.    (No. 9050.)

(Court of Civil Appeals of Texas. Dallas. Oct. 6, 1923. Rehearing Denied June 27, 1925.)

1. Pleading ⟜183—Allegation of fraud in supplemental answer, not embodied in first amended original answer, held not to be considered as defense on general demurrer.

In action to recover levee district assessment, allegations of fraud by district authorities in inducing defendant to give up protest against assessment, included only in supplemental answer, filed in response to first supplemental petition, should not be considered in passing on general demurrer to defenses specially interposed, in view of fact that they were not embodied in first amended original answer.

2. Levees and flood control ⟜25—Final action of commissioners of appraisement of benefits is not subject to collateral attack for mistaken misrepresentations of supervisors.

Final action of board of appraisers of benefits of levee district at hearing under Laney Act (Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½–5584½tt), is not subject to collateral attack in action to collect assessment because of mistaken misrepresentations of supervisors of district that assessment against hill land would be used to provide drainage for it.

3. Levees and flood control ⟜27—Purchaser of bonds not necessary party to suit by levee district to collect assessment.

In suit by levee district against landowner to collect assessment, purchaser of bonds sold before suit was instituted was not necessary party thereto.

4. Levees and flood control ⟜25—Fact that commissioners of appraisement considered improper elements of benefit in making assessments held not to make assessment subject to collateral attack in action to recover it.

Even if it be assumed that Laney Act, § 21 (Vernon's Ann. Civ. St. Supp. 1922, art.

5584½gg), positively prohibits making levee district assessment for any purpose not included within and for purpose of 'carrying out plan of reclamation approved by state reclamation engineer, fact that plan of reclamation did not provide for hill drainage for which land was assessed did not render assessment void and subject to collateral attack in action to recover assessment, in absence of showing of fraudulent conduct by commissioners of appraisement.

**5. Levees and flood control ⬩═➔6—Judgment by commissioners' court in proceeding to establish levee district held immune from collateral attack, except for vice affirmatively appearing on face of judgment entry.** ᵥ

Judgment entered by commissioners' court in proceedings to establish levee district is immune from collateral attack, unless vice destroying its existence affirmatively appears on face of judgment entry.

**6. Levees and flood control ⬩═➔6—Landowner, sued for levee district tax, cannot attack corporate existence of levee districts.**

Landowner, sued for levee district tax, cannot attack corporate existence of levee district, which can be done only by quo warranto proceedings.

**7. Evidence ⬩═➔65—Landowner in levee district charged with knowledge of law governing organization of and conduct of affairs of district.**

Owner of land in levee district, and who resided therein and took active part in organization of district, is charged with knowledge of law governing organization of and conduct of affairs of district.

**8. Levees and flood control ⬩═➔6—Orders, decrees, and judgments of commissioners of appraisement of levee district are not protected against collateral attack for bad faith, abuse of discretion, and other fraudulent conduct.**

Though Laney Act (Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½–5584½tt), relating to establishment of levee districts, provides that orders, decrees, or judgments by commissioners of appraisement of districts in course of performance of duties shall be final and conclusive, they are not protected against collateral attack for bad faith, gross abuse of discretion, or other fraudulent conduct, seasonably and properly instituted.

**9. Levees and flood control ⬩═➔6—Judgment creating levee district, whose recitals show that requirements of law were complied with, held conclusive on collateral attack, in action by district to recover assessment.**

Under Laney Act, §§ 2, 5, 7 (Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½a, 5584½b, 5584½bbb), relating to establishment of levee districts, judgment entered creating district, by express recitals showing that statutory requirements were complied with, purports absolute verity in face of collateral attack on ground that plan of reclamation had never been adopted or that report had never been filed by state reclamation engineer, in action by district to recover assessment.

**10. Constitutional law ⬩═➔63(3)—Laney Act held not invalid as attempting to confer on commissioners' court authority to create another court.**

Under Laney Act, § 19, as amended by Acts 37th Leg. First Called Sess. (1921), c. 50 (Vernon's Ann. Civ. St. Supp. 1922, art. 5584½fff), authorizing commissioners' court to appoint commissioners of appraisement for levee district, court for appraisement was created by Legislature, and power to create such court was not conferred on commissioners' court, which had only power to select individuals constituting personnel thereof.

**11. Counties ⬩═➔47—"County business," as used in Constitution, creating and conferring jurisdiction on commissioners' court, should be given liberal construction.**

Under Constitution, providing that county commissioners' courts shall exercise such power and jurisdiction over all county business as is conferred by Constitution and laws of state, "county business" should be given broad and liberal construction so as to extend powers to any and all business of county, and any other business of county connected with or interrelated with business of any other county properly within jurisdiction of such courts under Constitution and laws.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, County Business.]

**12. Levees and flood control ⬩═➔2—Laney Act held not void as conferring on commissioners' court authority to transact business other than county business.**

Laney Act (Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½–5584½tt), providing for organization, etc., of levee districts, is not void as conferring on commissioners' court authority to transact business other than county business.

**13. Levees and flood control ⬩═➔2—Laney Act held not void because authorizing levee improvement districts to be created out of parts of more than one county.**

Under Const. art. 16, § 59, relating to creating levee districts adopted by amendment in 1917, Laney Act (Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½–5584½tt), is not void because authorizing levee districts to be created out of parts of more than one county.

**14. Constitutional law ⬩═➔284(1)—Giving commissioners of appraisement of levee districts power to assess benefits held not denial of due process of law.**

Giving commissioners of appraisement of levee districts power to assess benefits, under Laney Act (Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½ to 5584½tt), is not denial of due process of law on ground that commissioners do not constitute court, in view of fact that action of such commissioners in assessing property for benefits not authorized by law, or arbitrarily considered benefits, or refusing to assess property therefor, can be enjoined.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

⬩═➔For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by the Dallas County Bois d'Arc Island Levee District against M. C. Glenn. Judgment for plaintiff, and defendant appeals. Affirmed.

See, also, 268 S. W. 452.

Lee R. Stroud and Spence, Haven & Smithdeal, all of Dallas, for appellant.

Crane & Crane, of Dallas, and Goree, Odell & Allen, of Fort Worth, for appellee.

HAMILTON, J.    Appellee instituted this suit for the purpose of recovering an annual assessment levied against appellant's land in the form of a levee district tax imposed in behalf of appellee, which is a levee district incorporated under the statutory provisions of chapter 44, General Laws of Texas, enacted at the Fourth Called Session of the Thirty-Fifth Legislature (Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½–5584½tt), an enactment generally designated as the "Laney Act."

The pleadings upon which appellant based his resistance to the suit were a general demurrer, a general denial, and certain special pleadings, comprehended among which were allegations to the effect that to enforce the payment of the tax would confiscate appellant's land included in the district, and particularly certain hill land upon which a heavy levy was imposed, and which, under the allegations, would receive no benefits whatever; also an allegation that the assessments which appelleee sought to enforce were levied in contemplation of the construction of hill drainage, which was beyond the scope of appellee's authority to consider and impose. It was further alleged that the assessment was laid upon the theory that appellant's land would be benefited by the digging of a canal for appellant's hill drainage of land which did not overflow, and to which the construction of levies to prevent overflows would afford no protection whatever; and that all the money derived from the sale of the bonds issued by the levee district had been applied to and exhausted upon the erection of levies to protect overflow lands, so that none remained with which to construct canals for hill drainage; and that, accordingly, the assessment could not justly and legally be enforced against appellant's land included in the district, consisting of hill land, which could not be benefited by the construction of levies to prevent overflows, and which could be benefited only by the construction of canals for hill drainage.

In response to an allegation made by appellee that appellant did not appear at the time and place appointed by the commissioners of appraisement for hearing objections to their assessments, appellant alleged that he did appear in person at such time and place for the purpose of making objections and exceptions to the assessments made against his land, and did state his objections and exceptions, but that the commissioners of appraisement and the supervisors of the district represented to him that the proposed assessment against his land was made in contemplation of the construction of canals and ditches to provide hill drainage for it; that they represented to him that such canals would be constructed with the proceeds of the bonds, and that, in reliance upon these representations, he was induced to desist from urging his objections, and, because of the representations made by these officials and representatives of appellee, he abandoned the pursuit of his protest in compliance with the procedure prescribed by the terms of the statute; that he was misled and deceived by these representations, which were false, although made in good faith by the board of appraisers. It was alleged that the appraisers were misled by the supervisors, who did know that no hill drainage would be constructed; that none was contemplated by them, and that they never intended it should be afforded; and that, while the appraisers, relying upon the false representations of the supervisors, acted in good faith in persuading appellant that the benefits to his land would be commensurate with the assessments made against it for hill drainage, nevertheless such improvements were never contemplated or attempted; and that the false representations, made in good faith to appellant by the appraisers, induced him to desist from protesting the assessment under and in compliance with the terms of the statute under which the levee district was created and the assessment against his land was levied.

A general demurrer to all the various defenses specially interposed by appellant was sustained, and judgment was rendered against appellant for the entire amount in suit, and the court decreed a foreclosure of the tax lien against the land provided by the statute.

The case is presented to us upon various propositions, none of which can be sustained unless it be one among them which suggests that the general demurrer ought not to have been sustained because the petition comprehended an allegation of fraud against the supervisors of the district and board of appraisers, officials upon whom, under the statute, specific duties and responsibilities of conducting the affairs of the levee district, are imposed.

While the petition is not characterized by allegations either emphatic or challengingly specific as to fraud or imposition, we are nevertheless constrained to hold that that portion of it which recites that the supervisors knowingly made statements to appellant which were untrue with reference to hill drainage and consequent benefits to him therefrom, and that the board of appraisers

through mistake made similar representations to him at variance with the plans and purposes, all of which representations allured him into inaction and abandonment of protestation against the levy in conformity with the course prescribed under the statute, sufficiently alleged fraudulent conduct against which he might be entitled to relief. The statute enacted in conformity with and under the direction of article 16, § 59, of the Constitution, manifestly expresses the legislative purpose to render the assessments made by the board of appraisers conclusive if free from positive fraud and unattended by such reckless mistake as will amount to constructive fraud. The evident legislative purpose was to free such districts from the delays and difficulties of prolific litigation in building the levees and collecting the assessments. This policy is revealed in the tedious and specific provisions for procedure prescribed by the law. Articles 5584½ to 5584½tt, V. S. T. C. S. (1922 Supp.). But, when an owner of property in a district is deceived and thus deprived of the opportunity by the officers of the district to protest against the imposition of a tax upon land which the plans of reclamation are not intended to benefit, and when his land can receive benefits only from certain particular kinds of improvements which those managing the district do not intend to make, and which such officers as well as the board of appraisers represent to the owner will be made, thereby lulling him into acquiescence and depriving him of his opportunity to pursue statutory methods of remedy, he will not be denied access to the courts for redress. The statute does not express such denial of judicial remedy. This is the effect of the Supreme Court's decision in the case of Wilmarth v. Reagan, 242 S. W. 726. The purpose of that suit was, first, to annul the order of the commissioners' court creating the levee improvement district, or, in the alternative, to rearrange its boundaries so as to exclude from the district certain lands belonging to those who instituted the suit on the grounds that proper hearings were not allowed, that the boundaries were insufficiently described, and that lands belonging to those who sued were wrongfully included in the district; secondly, to annul the report of the commissioners of appraisement of the district assessing the damages and benefits to lands therein, and to annul the order of the supervisors of the district approving the report, or, in the alternative, to compel a reassessment of damages and benefits on the ground that the assessments were discriminatory in favor of one of the supervisors and of others; thirdly, to prevent the sale of the bonds voted to provide funds for the proposed improvements in the district, and to prevent the levy of taxes to pay the bonds, for the alleged reason that the election was held by an election manager instead of by such election manager and two clerks appointed for the purpose.

Actual fraud, consisting of acts depicted as being corruptly and designedly wrongful, was alleged as permeating the conduct of the supervisors and board of commissioners, inducing the steps undertaken by them against which complaint was made and relief was sought. The Commission of Appeals, speaking through Judge Powell, held in that case that the trial court erred in sustaining a general demurrer because the allegations of fraud set forth in the petition raised an issue for the determination of that court, notwithstanding the provisions of the statute prescribing special procedure for relief by aggrieved parties against assessments.

Here the allegation is made, in effect, that the supervisors intentionally and knowingly made false statements to appellant as to what was intended, and that appellant relied at least in part upon these representations by the supervisors, which they knew to be false. The allegations sufficiently convey the idea that these statements made by the supervisors, coupled with the innocent false representations of the commissioners of appraisement, lulled appellant into a sense of security, and, without any fault of his, deprived him of his opportunity to avail himself of the statutory remedy against the concealed wrong thus imposed upon him. The allegations attribute to the supervisors the practice of deliberate deceit upon appellant, and therefore present in this respect a charge of actual fraud.

If no improvement was to be conferred upon appellant's hill land, it was the legal duty of the commissioners of appraisement to ascertain and know this fact. It was also their duty to act upon it and shape their assessment in accordance with it. Assuming the allegations to be true, they acted upon an assumption or belief contrary to this fact they were charged with knowledge of, and, upon appellant's seeking relief at their hands, they diverted him away from the only course the law directed him to follow for his protection. This constitutes an allegation of constructive fraud, which, in the respective relations of the parties here, need not encompass more than an honest mistake by the officials. The effect of the injury alleged in this manner to have been done is the same as if it had resulted from actual fraud.

Accepting appellant's allegations as true, then, by fair promises and misrepresentations, the supervisors and the board of commissioners stripped appellant of the only defense against the wrongful assessment which the statute affords. Their action and not his inaction in the premises under the allegations deprived him of his right and inflicted the injury which he alleges. Hence, according to the petition, through their erroneous and wrongful reassurance, upon which

he had a right to rely in good faith, he must lose a valuable right and suffer an injury without a remedy, unless the courts are open to him for the hearing of which the officials fraudulently deprived him. Fraud, either actual or legal, vitiates whatever it enters into—contracts, judgments and all other transactions—and, in whatever form it appears, the general rule is that courts will accord relief against it. 12 R. C. L. 230 et seq.; 26 C. J. 1062; 27 C. J. 30.

It is true that in the case of Wilmarth v. Reagan, supra, the fraud was alleged to have been committed by the officials for their own profit, and the suit was instituted against them at a time immediately following the levee district's incipiency; whereas, there is no charge in this case that those whose alleged misrepresentations are complained against acted for their own personal advantage. Neither did appellant immediately seek relief.

However, the profit acquired by the wrongdoer is not the test of the right to relief against fraud. That right depends upon the fact that he against whom the fraud is committed has suffered. It is his loss rather than his adversary's gain which justifies judicial interposition against fraud. Neither can the charge of fraud, considered merely as a pleading in the light of a general demurrer, be regarded as less compelling because the relief was not invoked without delay, or because the taint of fraud appears at a belated stage of the proceedings. Whenever and wherever fraud enters, it renders voidable whatever steps it induces. Acts done and acts omitted because of it are devoid of binding legal consequences. It vitiates whatever it produces, and, in such cases as this, courts will regard the results which body forth from it as happenings which never occurred. By this rule it must be held that appellants made allegations of conduct against appellee's officials, the legal effect of which is that they neither granted appellant a hearing nor made a levy against his hill land, which are necessary prerequisites to the imposition of the tax resisted.

There are no allegations in the petition which are sufficient, in our opinion, to make any issue as to 100 acres of land, a part of the O. H. Lindsey tract, which the owner admits to be land the levee district was designed to protect from the overflow waters of the Trinity river. As to this portion of appellant's land, there is no allegation sufficient to deprive the board of appraisers' assessment of its conclusiveness, and, as to it, the general demurrer was properly sustained.

For the reasons above mentioned, the judgment of the trial court is reversed and the cause remanded.

### On Motion for Rehearing.

VAUGHAN, J. After filing motion for rehearing, appellee filed motion to certify to the Supreme Court the questions on which the result of this appeal necessarily depended. This motion was granted, and the following certification made on the 11th day of January, 1924:

"First question: Since the allegations of fraud were included only in the supplemental answer, filed in response to appellee's first supplemental petition, should they be ignored in considering the general demurrer because they were not embodied in the first amended original answer, or should they be considered as a defense to the cause of action, notwithstanding the pleading which contains them is denominated as a supplemental answer?

"Second question: Do the commissioners of appraisement constitute a court of special jurisdiction whose findings of benefits to land and whose laying of assessments against it constitute decrees and judgments of a court such as may not be collaterally attacked for fraud?

"Third question: Since the bonds had already been sold before the suit was instituted, was the purchaser of them a necessary party to the suit under the allegations of the parties?

"Fourth question: If the commissioners of appraisement do not constitute a court in the sense that their orders and decrees, apparently regularly made under the statute, are not to be considered as the judgments of a judicial tribunal, can a suit for the collection of a delinquent assessment, on its face appearing to have been regularly made in conformity with the statutory provisions of chapter 44, of the acts of the Thirty-Fifth Legislature, be resisted upon allegations of fraud?"

These questions were answered by opinion of Commission of Appeals (268 S. W. 452), filed in this court on the 7th day of March, 1925, as follows:

[1] The reply given to the first question is that the allegations in the supplemental answer are not to be considered by the Court of Civil Appeals as a defense to the cause of action.

[2] The second question was not answered, but was discussed in connection with, and in a measure included in, the answer to the fourth question, to wit, the court in disposing of said question stated:

"There is no necessity of going to the extent of saying that the judgment of the board, like the commissioners of appraisement in the present litigation, may not be set aside on collateral attack for bad faith, gross abuse of discretion or dishonest motives attributable to the constituents of the tribunal itself, because such elements are lacking in this case; but there is no difficulty in saying, by force of the holdings that have been noted, that, whether such a board be considered as a court or as merely an assessing body, its final action after the statutory hearing is not subject to collateral attack for fraudulent misrepresentations of the supervisors of the district, for incorrect but honest action on the part of the commissioners or for wrong result. So that the second and fourth questions may be answered together. The reply given to them is that the alleged defense of fraud was not good."

[3] To the third question:

"That under the allegations and pleas the purchaser of the bonds was not a necessary party."

It is contended by appellant that the first question was not answered, the answer thereto only being that "there appears to be no reason for disturbing its decision," referring to the action of the trial court in sustaining the general demurrer to the supplemental answer. In this it is very apparent that due effect has not been given by appellant to the following language of the opinion, which must be reckoned with in determining the scope and meaning of the answer to this question, to wit:

"The district court sustained plaintiff's demurrer to the first amended original answer, which is the ruling referred to in the certified question, and also its demurrer, just above mentioned, to the first supplemental answer. The defendant contended in the Court of Civil Appeals that this was error because the first supplemental answer rendered the first amended original answer good as against general demurrer. * * * The point for investigation is therefore whether the Court of Civil Appeals may consider the first amended original answer as aided by the first supplemental answer in a case where it was not so viewed below. * * * The Supreme Court in Crescent Ins. Co. v. Camp et al., 64 Tex. 521, held that the trial court should not have considered a supplemental petition as an amendment to the original, because, 'under the rules, the defects in the petition could only be cured by an amendment, whilst the supplement is confined to the avoidance of matter of defense set up in the answer.' * * * In the present instance the supplemental answer was not allowed to remain; demurrer was sustained to it. And the first amended original answer also left the case on demurrer. * * * The rules in their interpretation in the Camp Case were not departed from by the district court, but were obeyed. There appears to be no reason for disturbing its decision. The reply given to the first question is that the allegations in the supplemental answer are not to be considered by the Court of Civil Appeals as a defense to the cause of action."

Giving the above language its commonly accepted meaning, having due regard for the context in which used, but one conclusion can be reached as to the answer made, to wit, that the trial court did not err in sustaining appellee's general demurrer to appellant's first amended original answer and supplemental answer, and that this court could not consider as a defense to appellee's cause of action the allegations contained in appellant's supplemental answer. Said answers determine this appeal as originally presented adversely to appellant, and further discussion would be unnecessary but for other questions advanced by appellant since the filing of the motion for rehearing.

[4] Appellant contends that because the plan of reclamation did not provide for hill drainage, and appellant was assessed for such drainage, that the action of the commissioners of appraisement in that respect is void, in that said commissioners did not have jurisdiction to make such assessment. Therefore appellee's general demurrer to the allegations that the commissioners of appraisement had no jurisdiction to make the assessment on account of the fact that hill drainage was not a part of the plan of reclamation should not have been sustained.

In reply to this contention, it is urged by appellee that same is without merit, for the reason that the issue is not one of jurisdiction but of alleged false representation as to the improvements to be made. It may be assumed that section 21 of the Laney Act (now articles 5584½ to 5584½tt, inclusive, comprising 63 sections, vol. 2, 1922 Supplement, V. T. C. & C. S.), in positive terms prohibits the making of any assessment for any purpose not included within and for the purpose of carrying out the plan of reclamation as finally approved by the state reclamation engineer, which represents the purpose and object of the creation of the district, and for the accomplishment of which the district is authorized by law, through means of the issuance of bonds and the levy of a tax, to retire same, to use its credit for the purpose of accomplishing the purpose of its organization. For this purpose the commissioners of appraisement unquestionably had jurisdiction to assess the benefits to property owners residing in the district, by reason of the improvements to be made therein, and as a basis for taxation this body acted within the authority of the law; and, though it may be conceded that the commissioners imperfectly discharged this duty in considering elements of benefit which they were not authorized to consider, such remise of duty or erroneous action will not, in the absence of fraudulent conduct on the part of said commissioners, present a question of want of jurisdiction as to the act thus performed, and subject to a collateral attack the order entered as their findings on the matter before them. The jurisdiction of the commissioners to act in this respect depended upon the judgment of the commissioners' court creating the district, the proper selection of the board of supervisors, the selection by that board of the commissioners of appraisement, their qualifying as such by taking the oath prescribed by law, and organizing as commissioners of appraisement for said levee district.

[5, 6] The organization of appellee district is affirmatively shown by the judgment of the commissioners' court entered for that purpose, as a governmental agency with authority to pledge its credit as a political subdivision of the state for carrying out the purpose of its creation. Therefore the judgment entered by the commissioners' court on the proceedings had for the purpose of establishing its

existence, was, in the very nature of things, intended by the Legislature to be immune from collateral attack unless the vice that would destroy its existence affirmatively appeared on the face of such judgment entry. Appellant is not in position to attack the corporate existence of appellee, as this can only be done by quo warranto proceedings. Wilmarth v. Reagan (Tex. Com. App.) 242 S. W. 726.

[7] Appellant was one of the moving figures in the organization of the district. He had an opportunity to be advised of all the proceedings had in that respect, as well as all proceedings that occurred thereafter around which now centers this litigation. He was charged with knowledge of the provisions of the law governing the organization of and the conduct of the affairs of the district, and had access to and could have become advised by the record of all proceedings had in that respect. An examination of the report of the state reclamation engineer would have disclosed to him that the promise he was relying upon could not be fulfilled, because the law prohibited it from being carried out, in that the plan did not provide for hill drainage.

The case of Bloomquist v. Board of Supervisors, 188 Iowa, 994, 177 N. W. 95, by the Supreme Court of Iowa, involved a state of facts similar to the facts of this case, and therefore so much in point that we make the following quotation therefrom in support of our disposition of this proposition:

"Assuming for the moment that the action of the board thus set forth was *irregular* and *illegal*, could the illegality be cured by the party adversely interested? *The board had complete jurisdiction of the subject-matter; that is, of the drainage proceeding. The illegality complained of was one which the board itself could have readily cured by correcting its procedure.* The power of the plaintiffs to waive correct procedure was quite coextensive with the power of the board to correct its procedure. *If the illegality defeated the jurisdiction of the board in any sense, it was a jurisdiction of the res and not of the subject-matter.* It was therefore subject to waiver by the party adversely affected, and his consent to jurisdiction was thereby implied. McLain v. City Council, 189 Iowa, 264, 176 N. W. 817.

"We hold, therefore, that the objection to jurisdiction thus raised by plaintiffs was waived before the board, and that the plaintiffs can be heard on appeal only on the objections presented to the board."

This is not in conflict with the holding in the case of Wilmarth v. Reagan, supra, which holds that the action of the appraisers is not so final and conclusive as to prevent the district court from having jurisdiction to determine on its merits an action attacking assessments of benefits and damages for the combined fraud of supervisors and appraisers, filed before the rights of innocent third parties intervened.

[8] As a special tribunal created by law to perform the duties as pointed out in the Laney Act, the commissioners of appraisement appointed for appellee constituted a special tribunal, and, although by said act it is provided that the orders, decrees, or judgments entered by said commissioners in the course of performance of the duties enjoined upon them by law shall be final and conclusive, yet same are not protected against collateral attack for bad faith, gross abuse of discretion, or other fraudulent conduct on the part of the members of the tribunal seasonably and properly instituted. Glenn v. Dallas County, etc. (Tex. Com. App.) 268 S. W. 452; Wilmarth v. Reagan, supra. However, appellant's allegations as to fraud, etc., are not sufficient to bring the case within the rule announced in Wilmarth v. Reagan.

[9] It is contended by appellant that the judgment of the lower court is not supported by the pleadings and the evidence, in that the law requires the matter of organizing a district to be submitted to the state reclamation engineer, who shall determine the necessity, feasibility, and probable cost of reclaiming the land of such district from overflows, and therefore it was incumbent upon appellee, by the introduction of proper proof, to have established, in compliance with such provision of the law, not only the filing of a report by the state reclamation engineer, but the plan of reclamation as adopted by appellee. Appellant in this respect contends that the evidence does not show that any plan of reclamation was ever filed, or the plan of reclamation as adopted.

Section 2 of the Laney Act (Vernon's Ann. Civ. St. Supp. 1922, art. 5584½a), directs that, as a part of the order to be entered by the commissioners' court acting on the petition filed to create a levy improvement district, the clerk be directed "forthwith to issue a notice of the filing of such petition and of its general purport, stating the time and place of hearing, which shall be mailed forthwith to the state reclamation engineer at his office in Austin, Texas;" and section 5 (article 5584½b), makes it the duty of the state reclamation engineer, upon receipt of said notice, forthwith, by himself or deputy, to examine said proposed district for the purpose of obtaining the necessary information "to enable him to determine the necessity, feasibility, and probable cost of reclaiming the lands of such districts from overflows, and the proper drainage thereof, together with the costs of organizing such district, * * * , and file his written report in respect to the matters concerning which he has investigated. * * *" Section 7 of said act (article 5584½bbb) provides for the hearing and the proceedings to be had upon the petition, the following language showing clearly that the report of the reclamation engineer must be considered, and the effect thereof carried into, the

judgment of the court creating the district, to wit:

"If, upon the hearing of such petition it be found * * * that the proposed improvements are desirable, feasible, and practicable, and would be a public utility and a public benefit, and would be conducive to public health, then such court shall so find and render judgment deciding such findings and creating and establishing such district, which judgment and findings shall be embodied in an order which shall be entered of record in the minutes of said court."

The judgment entered creating appellee district by express recitals shows that all of the above requirements were complied with, and, as incorporated therein, purport absolute verity in the face of a collateral attack; and, being the best evidence, not only that such proceedings were had, but that all of the requirements of the law in order to organize appellee district had been complied with, nothing appearing upon the face of the record affirmatively to the contrary.

That a judgment creating a levee improvement district under this act should not be subject to collateral attack is conclusively established by the following concluding provisions of said section 7, to wit:

"A levee improvement district created as herein specified shall be a governmental agency and a body politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the purposes for which it is created as may be conferred by this act, or any other law of this state to the benefits of which it may become entitled."

This, in our opinion, is ample authority to justify the conclusion reached on this proposition.

In reference to the constitutionality of the act, it is first suggested that the commissioners of appraisement do not constitute a court, because the Legislature cannot confer upon the commissioners' court authority to create another court; and, second, that the act is void for the reason that it confers upon the commissioners' court the authority to organize a levee district, and that the Legislature cannot confer upon the commissioners' court authority to transact any business other than county business, and that the organization of such districts does not constitute county business; third, that the act is void because it authorizes these districts to be created out of parts of more than one county. The act was passed in obedience to and under the authority of section 59, article 16, of the Constitution of Texas, which was adopted as an amendment in 1917, as follows:

"The conservation and development of all of the natural resources of this state, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semiarid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forest, water and hydroelectric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the state, are each and all hereby declared public rights and duties; and the legislature shall pass all such laws as may be appropriate thereto.

"There may be created within the state of Texas, or the state may be divided into, such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of this amendment to the Constitution, which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject-matter of this amendment as may be conferred by law."

[10] Under a most careful analysis of the terms of the Laney Act, we have failed to find a single one that is not sanctioned by or in keeping with the plain provisions of the above constitutional amendment; in fact, every provision, in some form, is essential in order to keep faith with the sovereign will of the people. As to the means to be employed and the proceedings to be had to accomplish its purpose, the Constitution leaves that to the wisdom of the legislative judgment of the state. This was not abused or in any respect transcended. This is evident from a comparison of the provisions of the constitutional amendment and the terms of the legislative enactment. The Legislature did not attempt to confer upon the commissioners' court the authority to create another court, to wit, the commissioners of appraisement, but brought that body into existence by plain provisions of said act, and only provided for the selection of the individuals who should constitute this special tribunal; all authority and power being conferred by the provisions of the act creating the tribunal. The commissioners' court is not authorized to and has not the power to confer any authority upon said commissioners, or to relieve them of the performance of any duty required by the act. The only authority conferred by the act upon the commissioners' court in reference to the commissioners of appraisement is the appointment by a majority vote, after the creation of the district, of three supervisors for such district (see section 15 of said act [article 5584½ee]); said supervisors in turn being authorized under section 19, as same existed prior to amendment by Acts 1921, Thirty-Seventh Legislature, First Called Session, c. 50, § 1 (Vernon's Ann. Civ. St. Supp. 1922, art. 5584½fff), to appoint three disinterested commissioners who shall be known as commissioners of appraisement. Said commis-

sioners are now required to be appointed by the commissioners' court.

To sustain appellant's position would be to hold that the provision for the existence of the commissioners of appraisement as found in the act had nothing to do with the creation of that body, and that same was not created until the commissioners' court, in exercising authority conferred upon it, had selected the individuals who were to constitute the personnel thereof. In other words, it would be to hold that the appointees were "the court", and not members thereof. We hold that the act of the Legislature created "the court," and the only power conferred upon the commissioners' court in reference thereto was to select appellee's supervisors. This is illustrated by the judiciary provisions of our state Constitution and the acts of the Legislature in pursuance thereof, which provide for the judiciary of Texas. The voters, in selecting the judges of the different courts, do not create the courts, but only supply by the expression of their choice at the ballot box the individuals who are to serve as judges of the different courts. Certainly it cannot be contended that, in making this selection, the electorate creates the courts any more than it can be contended that, by the appointment of the board of supervisors, who, in turn, selected the commissioners of appraisement, that the commissioners' court created the commissioners of appraisement. Williams v. Castleman, 112 Tex. 193, 208, 247 S. W. 263, § 10 at page 270.

[11, 12] Is the act void because the Legislature cannot confer upon the commissioners' court authority to transact any business other than county business? Within the meaning of the Constitution creating and conferring jurisdiction upon commissioners' courts, we think it is proper to give to the term "county business" a broad and liberal construction so as not to defeat the real purpose that was intended to be accomplished by the law in providing that the commissioners' court shall exercise such power and jurisdiction over all county business as is conferred by the Constitution and the laws of the state, or as may be hereafter prescribed; and not that meaning which would restrict the powers of jurisdiction to the business of the county in and for which said court was created, but to any and all business of that county and any other business of that county connected with or interrelated with the business of any other county properly within the jurisdiction of such courts under the Constitution and laws of the state. This is not in conflict with the holding of the Supreme Court in the case of Electric Light Co. v. Keenan, 88 Tex. 201, 30 S. W. 868, in which the court held that the commissioners' court could not be required to perform the duties imposed upon it by an act of the

275 S.W.—10

Legislature requiring it to take charge of and administer the affairs of the defunct corporation of the city of Seymour, whose charter had been declared void, because this was not "county business" within the meaning of the provisions of the Constitution above quoted. The decision of this case must be limited to the question before the court which clearly shows that the business thus intrusted by the act of the Legislature to the commissioners' court was not "county business" of Baylor county, or of any other county related to or connected with business of Baylor county. This decision involved the validity of an act of the Legislature making it the duty of the commissioners' court to act in matters that were not in any respect county business, while the act in question only confers jurisdiction to act in reference to matters that are of public concern to the people of the county, therefore, county business.

This exact question has been directly decided contrary to appellant's contention in the case of Wharton County Drainage District v. Higbee (Tex. Civ. App.) 149 S. W. 381, in which writ of error was denied.

[13] This brings us to consider the third proposition involving the constitutionality of the act, to wit, that the act is void because it authorizes levee improvement districts to be created out of parts of more than one county. This authority is expressly conferred upon the Legislature by section 59, art. 16, supra; therefore, the Legislature was strictly within the authority conferred by said constitutional provisions in passing the act now challenged on this ground. Manifestly, this amendment to the Constitution authorized the Legislature to provide for the creation, organization, and government of these districts in such manner as it might deem appropriate, without regard to county boundaries or the agencies selected by the Legislature for that purpose. The conservation of natural resources of any county in the manner provided by this amendment is essentially a part of the business of the county, whether confined within the particular county of the commissioners' court exercising jurisdiction or embracing as a part of the district lands located in other counties; for, as an incident to the exercise of that business—that is, the business of creating levee improvement districts as authorized by said provision of the Constitution—it is essential that these districts shall in some instances comprise parts of more than one county. In many instances a stream against which protection is sought forms a boundary of two counties; in other instances, as in this case, the nature of the stream is such that proper protection could not be afforded by a levee constructed in one county only. The Constitution, as it existed prior to the adoption of the conservation amendment, su-

pra, did not authorize the creation of these districts in more than one county, and one of the main purposes of the conservation amendment was to correct this vital defect, because, in all probability, it had been found impractical in many instances to secure protection by levee which was limited to one county only, and the public interest of the state can by no means be restricted to the limits of any one county.

[14] Appellant further contends that the commissioners of appraisement do not constitute a court, because there is lacking the element of impartiality. This undoubtedly is based upon the proposition that, insomuch as the members of the board of control are selected by the commissioners' court, and that in turn, the board of control selected the commissioners of partition, that the interest of the members of the board of control in the district, being property owners therein, would put them in the attitude of having selected for their benefit, and for the benefit of the district at large, the personnel of the commissioners of appraisement; in effect, selecting the judges to try a case in which they were interested. Therefore a hearing before such body would not be due process of law. The board of appraisers in the discharge of the duties imposed by law could only act for the benefit of the district as a whole; the entire proceedings being for the purpose of determining the basis for the levy of a tax to take care of the cost of improvements to be made under the plan of reclamation, and not for the purpose of determining any controversy between the levee district and any of its members, or between the members themselves. A careful examination of the act discloses that in no respect could the commissioners of appraisement, in the discharge of the duties imposed by the terms thereof, be called upon to determine any matter that, on account of the selection of the commissioners, might lack the element of impartiality. It should be borne in mind that, notwithstanding the act makes conclusive and final the determination of any of the questions by the commissioners of appraisement that that body is authorized to pass upon, yet, if in the course of the proceedings it should develop that they were assessing property for benefits not authorized by law, or were arbitrarily considering such benefits or refusing to assess property for such benefits, the levee district or any member thereof undoubtedly would have the right to invoke the remedy by injunction to restrain such unjust proceedings, or, where the case would authorize it, by mandamus to compel the observance of the law governing the proceedings of that body. Hibben v. Smith, 191 U. S. 310, 24 S. Ct. 88, 48 L. Ed. 195; Shank v. Smith, 157 Ind. 401, 61 N. E. 932, 55 L. R. A. 564.

The following rule of law announced in Hibben v. Smith, supra, determines this proposition adversely to appellant:

"Assuming the necessity of a hearing before an assessment can be made conclusive, the law may provide for that hearing by the body which levies the assessment, and after such hearing may make the decision of that body conclusive. Although, in imposing such assessments the common counsel or board of trustees may be acting somewhat in a judicial character, yet the foundation of the right to assess exists in the taxing power, and it is not necessary that in imposing an assessment there shall be a hearing before a court provided by the law in order to give validity to such assessment. Due process of law is afforded where there is opportunity to be heard before the body which is to make the assessment, and the Legislature of a state may provide that such hearing shall be conclusive so far as the federal Constitution is concerned."

In the case of Spring Valley Waterworks v. Schottler, 110 U. S. 347, 4 S. Ct. 51, 28 L. Ed. 173, an attack was made upon the constitutionality of an act authorizing the board of supervisors of any city or county to regulate the rate to be charged by water corporations furnishing water to the public within its limits. In disposing of the case, the Supreme Court of the United States said:

"It is said, however, that appointing municipal officers to fix prices between the seller and the buyers is in effect appointing the buyers themselves, since the buyers elect the officers, and that this is a violation of the principle that no man shall be a judge in his own case. But the officers here selected are the governing board of the municipality, and they are to act in their official capacity as such a board when performing the duty which has been imposed upon them. Their general duty is, within the limit of their powers, to administer the local government, and, in so doing, to provide that all shall so conduct themselves, and so use their own property, as not unnecessarily to injure others. They are elected by the people for that purpose, and whatever is within the just scope of the purpose may properly be intrusted to them at the discretion of the Legislature. * * * By the Constitution and the legislation under it, the municipal authorities have been created a special tribunal to determine what, as between the public and the company, shall be deemed a reasonable price during a certain limited period. Like every other tribunal established by the Legislature for such a purpose, their duties are judicial in their nature, and they are bound in morals and in law to exercise an honest judgment as to all matters submitted for their official determination. It is not to be presumed that they will act otherwise than according to this rule." Shepard v. Barron, 194 U. S. 553 (24 S. Ct. 737), 48 L. Ed. 1115; Hibben v. Smith, supra; City of Paris v. Brenneman (59 Tex. Civ. App. 464), 126 S. W. 58; Pierce v. City of Huntsville (185 Ala. 490), 64 So. 301 (Supreme Court of Alabama); Oates v. Cypress Creek Drainage District (135 Ark. 149), 205 S. W. 293 (Supreme Court of Arkansas).

From a careful examination of the authorities above cited, and others not cited, we have reached the conclusion that the act is not subject to any of the defects urged, or the proceedings had under the act void on account of any of the attacks made thereon. This necessarily leads to the conclusion that the motion for rehearing should be granted, the judgment heretofore entered reversing and remanding this cause set aside, and that the judgment of the trial court should be affirmed. It is therefore accordingly so ordered.

Motion granted, and judgment of the trial court affirmed.