OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

April 19, 1999

The Honorable Ronald D. Hankins
Somervell County Attorney
P.O. Box 1335
Glen Rose, Texas 76043

Opinion No. JC-0036

Re: Whether a county may build, maintain, or improve city streets that are not integral parts of or connecting links with county roads or state highways (RQ-1200)

Dear Mr. Hankins:

You ask whether a county may build, maintain, or repair streets within a city in the county that are not integral parts of or connecting links with the county roads or state highways. In essence, you ask us to reconsider Attorney General Opinion JM-892 and Letter Opinion 97-084. These opinions conclude that a commissioners court does not have authority under section 251.012 of the Transportation Code and its predecessor to expend county funds to improve, maintain, or repair city streets that are not integral parts of or connecting links with the county road system. For the reasons set forth below, it is the opinion of this office that a commissioners court may expend county funds to build, maintain, or improve city streets that are not integral parts of or connecting links with the county road system in accordance with section 251.012, if such expenditures serve a county purpose, but that the commissioners court may not expend proceeds of bonds issued or taxes levied pursuant to article III, section 52(b) or (c) of the Texas Constitution to improve such streets. We overrule Attorney General Opinion JM-892 (1988) and Letter Opinion 97-084 to the extent they are inconsistent.

Under the common-law, "road" and "street" have distinct meanings. A "road" is a county highway forming a communication between the city limits of one city or town and the city limits of another city or town, while a "street" is a passageway within the bounds of a municipality. *See Williams v. Carroll,* 182 S.W. 29, 35 (Tex. Civ. App.–Beaumont 1916), *modified on other grounds,* 202 S.W. 504 (Tex. 1918). Significantly, a city street that forms an integral part of or connecting link with county roads or state highways is a county road to the extent that county funds may be spent for its improvement. *City of Breckenridge v. Stephens County,* 40 S.W.2d 43, 43-44 (Tex. 1931).

In 1985, the legislature authorized a county to improve city streets unconnected to county roads or state highways by adopting article 6702-1, section 2.010 of the Revised Civil Statutes.[1] That provision was repealed and is now codified as section 251.012 of the Transportation Code,[2] which provides as follows:

(a) With the approval of the governing body of a municipality, the commissioners court of a county may spend county money to finance the construction, improvement, maintenance, or repair of a street or alley in the county that is located in the municipality, including the provision of:

(1) necessary roadbed preparation or material;

(2) paving or other hard covering of the street or alley; or

(3) curbs, gutters, bridges, or drainage facilities.

(b) County work authorized by this section may be done or financed:

(1) by the county through the use of county equipment;

(2) by an independent contractor with whom the county has contracted;

(3) by the county as an independent contractor with the municipality; or

(4) by the municipality, with the municipality to be reimbursed by the county.

(c) A county acting under this section has, to the extent practicable, the same powers and duties relating to imposing assessments for the construction, improvement, maintenance, or repair as the municipality would have if the municipality were to finance and undertake that activity.

---

[1]See Act of May 27, 1985, 69th Leg., R.S., ch. 625, § 1, 1985 Tex. Gen. Laws 2323 (providing that County and Road and Bridge Act, article 6702-1, Revised Civil Statutes, is amended by addition of section 2.010).

[2]See Act of May 1, 1995, 74th Leg., R.S., ch. 165, §§ 1, 24, Tex. Gen. Laws 1025, 1154, 1870-71 (repealing article 6702-1, Revised Civil Statutes, the County Road and Bridge Act, enacting section 251.012 of the Transportation Code, and providing that "[t]his Act is intended as a recodification only, and no substantive change in law is intended by this Act.").

(d) A county acting under Subsection (b) may not spend bond proceeds for the construction of a new road in a municipality unless the construction is specifically authorized in the election approving the issuance of the bonds, regardless of the source of the money used to acquire the equipment used to construct the road.

(e) The authority granted by this section is in addition to the authority of a county provided by a local road law.

In Attorney General Opinion JM-892, this office interpreted former article 6702-1, section 2.010, to authorize a county to expend county funds to construct a street located within an incorporated city only if the street is an integral part of or connecting link with the county roads and highways. The office based this interpretation on the premise that section 2.010 codified in part the common-law rule that a county may exercise limited authority over city streets provided the city consents, and provided further, that such streets form "integral parts" of or "connecting links" with the county road system. Tex. Att'y Gen. Op. No. JM-892 (1988) at 8. Acknowledging that former section 2.010 did not expressly impose the integral part/connecting link requirement, JM-892 nevertheless grafted that requirement for the following stated reason:

> We note, however, that upon its original enactment, the County Road and Bridge Act did not purport to expand the powers of the commissioners court. Rather, it was merely intended as a revision of the laws concerning county roads and bridges. Acts 1983, 68th Leg., ch. 288, [1983 Tex. Gen. Laws] at 1431. . . . We are constrained to interpret section 2.010 in that light. Accordingly, the commissioners court of a county may spend county funds to finance the construction of a street or alley located within the boundaries of an incorporated city or town in a manner provided in section 2.010 if the governing body of the city or town consents and the street or alley is an integral part of the public roads or highways of the county or a connecting link therewith.

*Id.* at 9 (emphasis in original). Although Letter Opinion 97-084 questioned whether Attorney General Opinion JM-892 was correct in construing former section 2.010 to incorporate the integral part/connecting link requirement, it nevertheless adhered to the same conclusion. The opinion stated that interpreting former section 2.010 to include this requirement avoids constitutional questions that have not been addressed by the courts, the resolution of which cannot be predicted. Tex. Att'y Gen. LO-97-084, at 4-5.

With the above background, we turn to your request and re-examine section 251.012 of the Transportation Code, formerly article 6702-1, section 2.010 of the Revised Civil Statutes, guided

by the following principles of statutory construction: The ultimate purpose of statutory construction is to effect the legislature's intent. *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994). Where language in a statute is unambiguous, like a court, we must seek the legislature's intent in the plain and common meaning of the words and terms used. *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex. 1993). Every word excluded from a statute must be presumed to have been excluded for a purpose, and only when it is necessary to give effect to the clear legislative intent can additional words be inserted in a statutory provision. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981). Application of these principles leads us to conclude that the legislature did not intend the integral part/connecting link requirement to apply to streets that a county may improve under section 251.012. The statute plainly authorizes a commissioners court to expend county funds for city streets with the approval of the city's governing body. The statute did not and does not now expressly impose the integral part/connecting link requirement. Additionally, nothing in its language or legislative history indicates that the legislature intended this requirement to apply. In fact, the legislative history shows that the legislature indeed intended to expand a county's authority with respect to city streets.[3]

Attorney General Opinion JM-892's stated rationale for grafting the integral part/connecting link requirement to former section 2.010, notwithstanding the plain language of the statute, is unpersuasive. As was noted in Letter Opinion 97-084, the legislature adopted former section 2.010 in 1985, substantially after the formulation of the rule with respect to a county's authority over city streets and two years after the original enactment of the County Road and Bridge Act. The common-law rule that a county may exercise limited authority over a city street if the city consents and the street is an integral part of or connecting link with the county roads was formulated in the absence of specific statutory authority allowing the county to exercise any authority over city streets.[4] By adopting section 2.010, the legislature intended to change the law: it incorporated the common-law requirement that a city consent to county improvement of city streets but not the integral part/connecting link requirement. *See Monsanto*, 865 S.W.2d at 280 (where language is

---

[3]*See Hearings on Tex. S.B. 513 Before the Senate Comm. on Intergovernmental Relations*, 69th Leg., R.S. (May 7, 1985) (statement by sponsor, Senator Sarpalius, that bill would allow county to spend money on roads in city if approved by the commissioners court and city, giving example of "one particular county that has one major city within that county, half of the city doesn't have any paved roads but yet a bulk of the tax paid within the county comes from the City of Perryton and this would allow county commissioners [on] their own vote to be able to spend money within the city limits to rebuild roads or do anything there within the city owned roads.") (tape available from Senate Staff Services Office); *See also* HOUSE COMM. ON COUNTY AFFAIRS, BILL ANALYSIS, Tex. C.S.S.B. 513, 69th Leg., R.S. (1985) (Background Information) (bill would allow county with city's consent to spend county funds to upgrade, maintain, or repair city roadways with city's consent).

[4]*See, e.g., City of Breckenridge v. Stephens County*, 26 S.W.2d 405, 408-11(Tex. Civ. App.–Eastland 1930), *rev'd*, 40 S.W.2d 43 (Tex. 1931) (reviewing possible statutory sources of county authority over city streets, finding none, and concluding that if public welfare requires that such authority exist, legislature must supply it); Tex. Att'y Gen. Op. Nos. H-1018 (1977) at 4 (county lacks authority under general law to improve city streets unconnected with county roads); V-484 (1948) at 5(city streets unconnected with county roads may not be improved given exclusive municipal jurisdiction over streets and absence of county authority over such streets).

unambiguous, court must seek legislative intent in plain language).[5] The fact that former section 2.010 was added to the County Road and Bridge Act, which when originally enacted may have been intended merely to deal with county roads, did not require an interpretation of former section 2.010 as dealing only with county roads under any rule of statutory construction of which we are aware. Accordingly, we conclude that section 251.012 of the Transportation Code does not require that a city street be an integral part of or connecting link with county roads or state highways in order to be improved with county funds. This does not end our inquiry, however.

Even though the statute does not expressly require that city streets be integral parts of or connecting links with county roads or state highways to be eligible for expenditure of county funds, we must determine whether it must nevertheless be construed to incorporate such a requirement to avoid constitutional infirmities. *See Holmans v. Transource Polymers, Inc.,* 914 S.W.2d 189, 191 (Tex. App.–Fort Worth 1995, writ denied) (court must adopt interpretation which protects statute's constitutionality); TEX. GOV'T CODE ANN. § 311.021(1) (Vernon 1998) (when enacting statute, must presume legislature intended compliance with state and federal constitutions). Letter Opinion 97-084 indicated that expenditure of county funds to improve city streets unconnected with county roads implicated lending of credit concerns under Texas Constitution article III, section 52(a), among others. Tex. Att'y Gen. LO-97-084, at 4 n.14. Additionally, the opinion noted that county improvement and maintenance of such purely city streets may not constitute "county business" under article V, section 18 of the Texas Constitution. *Id.* Finally, while not implicating the constitutionality of section 251.012, the opinion suggested that proceeds of county road bonds issued or taxes levied pursuant to article III, sections 52(b) and (c), would not be available to improve city streets unconnected to county roads based on the Texas Supreme Court's holding in *Breckenridge,* 40 S.W.2d 43 (Tex. 1931).

We first consider article III, section 52(a). This section prohibits the legislature from authorizing political subdivisions to lend their credit except as otherwise provided in that section. This prohibition extends to transfer of funds or resources from one political subdivision to another. *See Harris County Flood Control Dist. v. Mann,* 140 S.W.2d 1098, 1104 (Tex. 1940) (under article III, section 52, no funds of Harris County can be pledged or used to pay bonds of Harris County Flood Control Dist.). However, "[a] transfer of funds for a public purpose, with a clear public benefit received in return" does not violate the constitutional lending of credit prohibition. *Meno v. Edgewood Indep. Sch. Dist.,* 917 S.W.2d 717, 740 (Tex. 1995). Thus, political subdivisions may assist each other only if the funds granted by one political subdivision to another are used for a definite public purpose of the granting subdivision. Tex. Att'y Gen. Op. No. JM-1255 (1990) at 3 (and cases cited therein). Therefore, a county may assist a city, but only if the county funds are used to accomplish a county purpose. Accordingly, the question for purposes of this opinion, is whether a county purpose may be accomplished by expenditure of county funds for improvement of city streets in the county.

---

[5]*See also supra* note 3.

Whether a particular use of county funds is for a county purpose is a determination that a commissioners court must make in the first instance, subject to judicial review for abuse of discretion. *See id.* Therefore, a commissioners court may expend county funds to improve a city street if it determines that such expenditure serves a county purpose. A determination that the expenditure serves a county purpose must, of course, be reasonable. *See Commissioners Court of Titus County v. Agan,* 940 S.W.2d 77, 80 (Tex. 1997) ("If the Commissioners Court acts illegally, unreasonably, or arbitrarily, a district court may so adjudge.").

Clearly, an expenditure of county funds to improve a city street that is an integral part of or connecting link with county roads serves a county purpose because such street is a county road. *See Breckenridge,* 40 S.W.2d at 44 (city street that forms connecting link with county road or state highway is county road to extent it may be improved with county funds.); *see also Williams,* 182 S.W. at 30 ("road" means county highway forming communication between city limits of city or town and city limits of another city or town, while "street" means passageway within bounds of municipality). But this is not the only circumstance in which a county purpose may be served. For example, a particular city street that is in need of repair might be a major public thoroughfare, necessary for travel to different parts of the county or used by a significant number of the county residents, yet unconnected to county roads. Whether a particular city street improvement indeed serves a county purpose would ordinarily be a question of fact to be determined by the commissioners court in the first instance. *Cf. Tarrant County v. Shannon,* 104 S.W.2d 4, 9 (Tex. 1937) (facts alleged with respect to road construction expenditures bear on wisdom of project but do not show abuse of discretion; determining necessity for construction and location of public highways left to sound judgment and discretion of commissioners courts). Therefore, in order to satisfy article III, section 52(a), a commissioners court would have to find that an expenditure would serve a county purpose before expending county funds for a city street unconnected to county roads.

We next consider article V, section 18(b). This constitutional provision, in pertinent part, states that the county commissioners and the county judge "shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all the county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed." This provision impliedly prohibits the legislature from giving commissioners courts authority over matters other than county business. *Mann,* 140 S.W.2d at 1105; *Sun Vapor Elec. Light Co. v. Kenan,* 30 S.W. 868, 868-69 (Tex. 1895). Accordingly, the question for purposes of this opinion is whether "county business" can include improvements of city streets within the county.

The term "county business" is to be given a broad and liberal construction so as to extend to the commissioners court power over all business of that county granted by the state constitution and laws. *Mann,* 140 S.W.2d at 1108 (citing *Glenn v. Dallas County Bois D'Arc Island Levee Dist.,* 275 S.W.137, 145 (Tex. Civ. App–Dallas 1925), *judgm't rev'd on other grounds,* 288 S.W. 165 (Tex. 1926)). Thus, "county business" has been broadly construed by the Texas courts to encompass matters of general concern to county residents. *See id.* at 1105 (affairs of conservation and reclamation district); *Rodgers v. County of Taylor,* 368 S.W.2d 794, 796-97 (Tex. Civ.

App.–Eastland 1963, writ ref'd n.r.e.) (reporting grand jury testimony); *Glenn*, 275 S.W.137 at 145 (affairs of levee improvement district).

We look at some specific matters that the Texas courts have considered as "county business." In *Sun Vapor*, the Texas Supreme Court held that the legislature could not require a commissioners court to take charge of and administer the affairs of a defunct city because it was not "county business." *Sun Vapor*, 30 S.W. at 868-69. Since *Sun Vapor*, the courts have not so narrowly construed "county business." In *Mann*, while the Texas Supreme Court recognized that section 18(b) "does, by implication, prohibit the Legislature from requiring duties from the Commissioners' Courts not 'county business,'"[6] it determined that "'county business' cannot be confined in such a narrow groove as to prohibit the legislature from committing to the commissioners' courts the governing affairs of conservation and reclamation districts," located within the county and created under a specific constitutional provision. *Mann*, 140 S.W.2d at 1105. The court did not indicate what the term would encompass beyond the affairs of a drainage district. It did, however, rely on and approve the holding in *Glenn*, 275 S.W. 137, with respect to the construction and scope of "county business." *See id.* at 1108.

The *Glenn* court dealt with a legislative act that imposed on the commissioners court duties with respect to levee improvement districts similar to the drainage districts at issue in the *Mann* case. The *Glenn* court distinguished the levee improvement district act in question from the legislative act involved in *Sun Vapor* as follows:

> [The *Sun Vapor*] decision involved the validity of an act of the Legislature making it the duty of the commissioners' court to act in matters that were not in any respect county business, while the act in question only confers jurisdiction to act in reference to matters that are of public concern to the people of the county, therefore, county business.

---

[6]The brief submitted with your request contends that article V, section 18(b) does not prohibit the legislature from conferring on the commissioners court powers and duties that are not "county business," relying on the *Mann* court's statement that "[i]t is evident that such constitutional provision contains no direct or express prohibition against clothing the Commissioners' Court with powers and duties other than 'County business'" to support its contention. *See* Letter from Robert A. Sparks, Attorney at Law, *Sparks & Rugeley, P.C.*, to the Honorable Helen Kerwin, Mayor, *City of Glen Rose* 12 (May 8, 1998) (on file with Opinion Committee). However, the brief fails to note the court's statement of the law that immediately follows:

> It follows that if such provision prohibits the Legislature from clothing the Commissioners' Courts with powers and duties not classed as "county business," it is by implication only. *It would seem that this Court is committed to the interpretation that the constitutional provision under discussion does, by implication, prohibit the Legislature from requiring duties from the Commissioners' Courts not "county business."*

*Mann*, 140 S.W.2d at 1105 (citing *Sun Vapor*, 30 S.W. 868 (Tex. 1895)) (emphasis added).

*Glenn*, 275 S.W. at 145. Thus, the Texas Supreme Court indicated that "county business" can encompass matters relating to other political entities in the county so long as such matters are of public concern to the people in the county. Matters of public concern to persons in the county under this analysis are those that serve a county purpose. *See also Rodgers*, 368 S.W.2d at 797 (benefits derived by county from reporting grand jury testimony "are those general intangible benefits which flow to the public generally from good law enforcement."). Therefore, matters that serve a county purpose are county business for the purposes of article V, section 18(b) of the Texas Constitution.

County improvement of a city street that is an integral part of or connecting link with a county road clearly constitutes "county business" because such street is a county road. *See Breckenridge*, 40 S.W.2d at 44 (city street that forms connecting link with county roads or state highways is county road to extent it may be improved with county funds). As noted earlier, that is not the only circumstance in which a county purpose may be served. Improvement of city streets unconnected with county roads but that are major thoroughfares, necessary for travel from one part of the county to another or used by a significant number of county residents, may also serve a county purpose. Consequently, such street improvement may constitute "county business," distinguishable from other general municipal functions, which are not. We believe a court considering the matter would probably find this distinction persuasive and construe "county business" liberally to encompass improvement of such city streets. Again, whether a particular city street improvement is indeed county business would ordinarily be a question of fact to be determined by the commissioners court in the first instance. *See Shannon*, 104 S.W.2d at 9. Therefore, in accordance with article V, section 18(b), we read section 251.012 as requiring a commissioners court finding that a particular expenditure is "county business."

We caution, however, that although in our opinion county improvement of city streets unconnected with county roads in certain circumstances may constitute county business, no Texas court has considered this precise question. Additionally, given the limited range of matters the Texas courts have considered in reference to county business, we do not know what other matters may be encompassed by the term, and limit our opinion as to the reach of county business to county improvement of city streets that serve a county purpose.

While article III, section 52(a) and article V, section 18(b) are not constitutional impediments to this office's construction of section 251.012 as authorizing county improvement of city streets unconnected with county roads, article III, sections 52(b) and (c) impose constitutional limits on the funds available for improvement of such city streets. You do not ask and we do not consider generally the sources of funds that may be available to a county to fund city street improvements, but we address the limitations imposed by sections 52 (b) and (c) because the *Breckenridge* case deals specifically with the expenditure of proceeds of bonds issued pursuant to section 52(b) for city streets.

Sections 52(b) and (c) provide one method of funding road improvements through the issuance of bonds and the levy of a tax to pay the bonds. *See* TEX. CONST. art. VIII, § 9 (authorizing eighty cent tax for general fund, permanent improvement fund, road and bridge fund and jury fund

purposes). These provisions are significant in that the tax authorized is separate from the eighty cent tax a county may levy for general county purposes, including payment of principal and interest on tax bonds or other obligations that a county is elsewhere authorized to issue or incur, and is not limited to an amount. *Id.* art. III, § 52(b), (c); *id.* art. VIII, § 9; *see also* 35 DAVID B. BROOKS, TEXAS PRACTICE: COUNTY AND SPECIAL DISTRICT LAW § 17.25 (1989) (discussing county's authority to issue bonds for roads payable from county's general eighty cent tax under article VIII, § 9, *or* payable from separate and unlimited tax under article III, § 52). Section 52(b) provides that if authorized by the legislature, a county, a political subdivision of the state, adjoining counties, or any defined district "and which may or may not include, towns, villages or municipal corporations" may issue bonds for construction and maintenance of "roads or turnpikes," payable from a tax levied and collected in the district or applicable territory but only if approved by two-thirds majority of the residents of the district or affected territory. TEX. CONST. art. III, § 52(b). Section 52(c) authorizes specifically a county to issue bonds for the same purposes and levy and collect the tax to pay the bonds if approved by a simple majority of the county residents rather than the two-thirds majority required in subsection (b).

In *Breckenridge*, the court looked at section 52(b) and reasoned that if a municipality is an "integral part" of a road district, the property of the municipality is clearly subject to road district taxes, just as is the property of the district located outside the municipality. *Breckenridge*, 40 S.W.2d at 44. Given the foregoing, the court continued, the commissioners court has, by the express provisions of the constitution, the right to expend road district bond funds on such city streets "where such streets are parts of and form connecting links in county or state highways." *Id.* Similarly, the court stated, where road bonds are voted by the entire county, the incorporated cities and towns located therein are clearly integral parts of the county, and all of the property in the county is subject to taxation for the payment of the county road bonds. *Id.* Thus, the court determined, a commissioners court has the authority to spend county road bond funds on *county* roads and highways in any part of the county. *Id.* The court concluded that if a street in an incorporated city or town "forms a connecting link in the county road or state highway, . . . it is a county road within the meaning of the *statutes* to the extent that county funds may be spent for the improvement thereof." *Id.* (emphasis added). It appears that "the statutes" the court referred to were the general provisions conferring authority on a commissioners court over public roads and highways in the county *and*, specifically, former article 726 of the Revised Civil Statutes,[7] authorizing issuance of the county road bonds at issue pursuant to article III, section 52(b). *See City of Breckenridge v. Stephens County*, 26 S.W.2d 405, 406 (Tex. Civ. App.–Eastland 1930), *rev'd*, 40 S.W.2d 43 (Tex. 1931) (county authorized to issue bonds in question for roads and turnpikes under Revised Civil

---

[7]Article 726 was repealed and its substance covered in article 752a of the Revised Civil Statutes, which was also repealed and its substance covered by article 6702-1, section 4.411, TEX. REV. CIV. STAT. ANN. (the County Road and Bridge Act); section 4.411was transferred to and redesignated as article 726, section 2.001, TEX. REV. CIV. STAT. ANN. (Vernon Supp. 1999). *See* Act approved Oct. 18, 1926, 39th Leg., 1st C.S., ch. 16, §§ 1, 30, 1926 Tex. Gen. Laws 23, 24, 32; Act of May 20, 1983, 68th Leg. R.S., ch. 288, §§ 1, 2, 1983 Tex. Gen. Laws 1431, 1492, 1526-27; Act of Jul. 3, 1984, 68th Leg., 2d C.S., ch. 8, §§ 1, 2(a), 1984 Tex. Gen. Laws 29, 54, 66-67; Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 21, 1995 Tex. Gen. Laws 1025, 1839.

Statutes, article 726 (1925) (repealed 1926)), *id.* 409-10 (discussing applicable statutes including former article 726).

The *Breckenridge* court assumed that a commissioners court had authority to expend the county funds at issue only on county "roads" as opposed to city "streets," but did not explicitly indicate the reason for that assumption. We are uncertain as to whether the court's assumption was based on the then general-law authority of a county only over county roads or on the fact that the funds at issue were proceeds of bonds approved by the voters and issued under article III, section 52(b) only for county roads, because of the common-law meaning of "road" as a county road.

If the *Breckenridge* court's assumption that a commissioners court could expend the county funds only on county roads was premised on the lack of a county's statutory authority over city streets, section 251.012 of the Transportation Code clearly provides that authority. However, if the court's assumption was based on the principle that bonds issued pursuant to article III, section 52(b) and the enabling legislation, former article 726 of the Revised Civil Statutes, were approved and issued only for county road purposes and thus proceeds of the bonds could be used only for county roads, then section 251.012 does not expand that authority.

Provisions authorizing a local government to create debt must be strictly and narrowly construed. *See San Antonio Union Junior College Dist. v. Daniel,* 206 S.W.2d 995, 999 (Tex. 1947) (and cases cited therein) (power to issue negotiable paper for improvements beyond powers of city or county unless specially granted; when granted, can only be exercised in mode and for purposes specified). Article III, sections 52(b) and (c) and the enabling legislation, current article 726, section 2.001 of the Revised Civil Statutes, continue to authorize bonds for "roads"; they do not authorize bonds for city streets. *See id.* (bonds may be approved and issued only for purposes expressly authorized); *Tri-City Fresh Water Supply Dist. No. 2 v. Mann,* 142 S.W.2d 945, 948 (Tex. 1940) (taxing power may be exercised only for purposes distinctly included in constitutional or legislative provision); *Black v. Strength,* 246 S.W. 79 (Tex. 1922) (proceeds of bonds approved by voters may be used only for purposes for which voters approved bonds); *Moore v. Coffman,* 200 S.W. 374 (Tex. 1918) (same); *Robbins v. Limestone County,* 268 S.W. 915, 919 (Tex. 1925) (taxes levied and collected for particular purpose may not be diverted to purposes other than for which they were voted); *see also* 35 DAVID B. BROOKS, TEXAS PRACTICE: COUNTY AND SPECIAL DISTRICT LAW § 17.25 (1989) (article III, § 52 bonds limited to roads and turnpikes). Section 251.012 authorizing improvement of city streets does not purport to be enabling legislation for article III, section 52(b) or (c) and, more importantly, it cannot amend a constitutional provision.

Given our uncertainty with respect to the *Breckenridge* court's rationale, we take the more cautious approach, and conclude that proceeds of bonds issued or taxes levied pursuant to article III,

section 52(b) or (c) may only be used for county roads.[8] Therefore, section 52(b) and (c) funds may not be used to improve city streets unconnected with county roads under section 251.012.[9]

In sum, section 251.012 of the Transportation Code, former article 6702-1, section 2.010 of the Revised Civil Statutes, does not by its terms require that city streets be integral parts of or connecting links with county roads in order to be improved with county funds. The legislative authorization of section 251.012, however, is limited by article III, section 52 and article V, section 18(b) of the constitution. These provisions do not as a matter of law prohibit county improvement of city streets that are not integral parts of or connecting links with county roads or state highways. Article III, section 52(a) and article V, section 18(b) do require that any expenditure of county funds for improvement to streets unconnected to county roads or state highways serve a county purpose. Article III, sections 52(b) and (c) limit the use of bond proceeds issued and taxes levied under these provisions to county roads. Accordingly, it is the opinion of this office that a commissioners court

---

[8]In this regard, we note that section 251.012(d) suggests that only construction of a new municipal street must be specifically approved by the voters before bond proceeds may be used for that purpose. However, we do not believe that proceeds of voter approved bonds, even those that are not issued pursuant to article III, section 52(b) or (c) as unlimited tax bonds, may be used for *any* city street purpose if such purpose is not specifically approved by the voters. In other words, proceeds of bonds approved by the voters only for county roads may not be used to repair or maintain city streets unconnected to county roads. *See Black*, 246 S.W. 79 (bond proceeds may only be used for the purposes for which the voters approved the bonds); *Moore*, 200 S.W. 374 (same); *see also Breckenridge*, 40 S.W.2d at 43-44.

[9]The brief submitted with your request argues that the *Breckenridge* case does not require that a street be an integral part of or connecting link with a county road in order for a county to expend funds for its improvement because, it asserts, the integral part/connecting link was not an issue in the case: "As Walker Street was a connecting link with the county road system, the question as to whether or not the county could pave, maintain, or lay streets which are city streets and do not connect or are not a part of a county road system was not before the Court." Letter from Robert A. Sparks, Attorney at Law, *Sparks & Rugeley, P.C.*, to the Honorable Helen Kerwin, Mayor, *City of Glen Rose* 4 (May 8, 1998) (on file with Opinion Committee). Accordingly, the brief states, *Breckenridge* did not hold that "Stephens County could not aid the City of Breckenridge by improving streets that were not part of the county road system as that question was not before the Court." *Id.* We disagree. The *Breckenridge* court's holding is as follows:

> After a careful investigation of the authorities, including the Constitution and laws of this state, we have reached the conclusion that the commissioners' court does have lawful authority to expend county road bond funds for the improvement of city streets *where such streets form integral parts of county roads or state highways*, when such improvements are made without conflicting with the jurisdiction of the municipality, or with its consent or approval.
> . . . .
>
> The commissioners' court has the right to expend county road bond funds on *county roads and highways* in any part of the county. *If a street of an incorporated town or city forms a connecting link in the county road or state highway, we think it is a county road* within the meaning of the statutes to the extent that county funds may be spent for the improvement thereof.

*Breckenridge*, 40 S.W.2d at 43-44 (emphasis added). The court clearly conditions the expenditure of county road bond proceeds to improve city streets on such streets being a part of or connected with county roads. To conclude that because the court does not hold that a county *cannot* improve a purely city street, the integral part/connecting link is not a requirement imposed by *Breckenridge*, as the brief does, is to ignore the plain language of the court's holding.

may expend county funds in accordance with section 251.012 to improve city streets in the county that are unconnected to county roads or state highways if such expenditure serves a county purpose and the commissioners court makes a finding to that effect. The commissioners court may not expend proceeds of bonds issued or taxes levied pursuant to article III, section 52(b) or (c) to improve such city streets. Finally, we observe that section 251.012 merely authorizes a county to pay for or undertake street projects within a municipality; it does not *require* a county to pay for or undertake them.

## S U M M A R Y

A county may build, maintain, or improve city streets that are not integral parts of or connecting links with county roads or state highways in accordance with section 251.012 of the Transportation Code, if such expenditures serve a county purpose. However, a county may not expend proceeds of bonds issued or taxes levied pursuant to article III, section 52(b) or (c) of the Texas Constitution for such city streets.

Attorney General Opinion JM-892 (1988) and Letter Opinion 97-084 are overruled to the extent they provide that a county may expend county funds in accordance with section 251.012 and its predecessor only to improve city streets that are integral parts of or connecting links with the county roads or state highways.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Sheela Rai
Assistant Attorney General