

January 27, 2025

Ms. Cindy Havelka
Fayette County Auditor
143 North Main Street, Suite A
La Grange, Texas 78945

**Opinion No. KP-0479**

Re: Authority of a sheriff to contract with other local governments and private entities for the off-duty work of sheriff deputies in certain circumstances (RQ-0538-KP)

Dear Ms. Havelka:

You present four scenarios involving security services performed by "off-duty" deputy sheriffs and ask about the authority of a sheriff's department in connection with the provision of such services.[1] You first ask whether the sheriff's department may "enter into a contract for patrolling" within a city "using off-duty deputies." Request Letter at 1. You explain that the City of Round Top (the "City") "accepted a contract with the Fayette County Sheriff['s] Department for off-duty Deputies to patrol" in the City.[2] *Id.* You state that, under the terms of the contract, the City will pay individual deputies directly for the hours worked. *Id.* You provide us a copy of the contract in question, noting that it was never presented to the commissioners court. *Id.*; Attachment at 1–2 ("Vendor Security Agreement"). In a related question, you ask whether the sheriff's department may "enter into a contract with any business or individual" for security services "performed while off-duty." Request Letter at 1. You explain that "[t]he Fayette County Sheriff['s] Department has been entering into contracts with businesses, governmental entities, and individuals" for private-security services but you question the authority of the sheriff's department to do so "without Commissioner's Court approval." *Id.* With regard to private-security services for school district sporting events, you question whether deputies providing the services may "be paid directly" by the school district, as opposed to an agreement being made between the school district and the commissioners court, "[s]ince the School Districts are . . . governmental entit[ies]."

---

[1] *See* Letter and Attachment from Ms. Cindy Havelka, Fayette Cnty. Auditor, to Hon. Ken Paxton, Tex. Att'y Gen. at 1–2 (Apr. 26, 2024), https://www.texasattorneygeneral.gov/sites/default/files/request-files/request/2024/RQ0538KP.pdf ("Request Letter" and "Attachment," respectively). We understand your use of the term "off duty" to communicate that the relevant services are provided outside of that obligated to Fayette County. *See, e.g.*, NEW OXFORD AMERICAN DICTIONARY 541 (3d ed. 2010) (defining "off duty" as "not engaged[] in one's regular work").

[2] You state that the contract is for four-hour shifts on Thursday, Friday and Saturday evenings beginning at 8 p.m. Request Letter at 1.

*Id.* at 1–2. Finally, you ask about the propriety of providing private-security services at a training facility in the absence of a mass gathering of people in the area. *Id.*

As a preliminary matter, this office received a brief from the Fayette County Attorney's Office on behalf of the sheriff's office disputing the basic nature of the contracts that form the basis for your questions.[3] The Brief asserts that Vendor Security Agreements exist solely between a law enforcement officer in their individual capacity and the vendor seeking private-security services, despite the use of sheriff's office letterhead. Brief at 3 (stating vendor payments go directly to the employee and do not pass through county accounts or co-mingle with county funds).

While this office cannot resolve disputed facts and generally accepts a requestor's recited facts as true, it does not construe contracts. *See* Tex. Att'y Gen. Op. Nos. GA-0738 (2009) at 2 n.3 ("We accept the facts [presented in the request letter] as true."), KP-0400 (2022) at 4 n.3 ("This office does not resolve disputes facts."), KP-0435 (2023) at 1 (explaining we do not construe contracts in the opinion process). Thus, we do not determine the nature of the contractual relationship that exists in the scenarios you present nor will we opine on their validity. Instead, we can generally advise you only on the legal principles that pertain to your questions.

**The commissioners court generally possesses constitutional authority to contract on behalf of a county for matters involving "county business."**

The commissioners court serves as the "administrative head of county government" and is constitutionally charged with exercising "powers and jurisdiction over all county business." *Guynes v. Galveston Cnty.*, 861 S.W.2d 861, 863 (Tex. 1993) (quoting Tex. Const. art. V, § 18(b)); *see also, e.g.*, *Comm'rs Ct. of Titus Cnty. v. Agan*, 940 S.W.2d 77, 79 (Tex. 1997) (explaining that these powers and duties "include aspects of legislative, executive, administrative, and judicial functions"). It follows that "[t]he authority . . . to make contracts [on a county's] behalf is strictly limited to that conferred, either expressly or by fair and necessary implication, by the Constitution and laws of this state." *Childress Cnty. v. State*, 92 S.W.2d 1011, 1016 (Tex. 1936) (collecting cases); *see also, e.g.*, *Anderson v. Wood*, 152 S.W.2d 1084, 1085 (Tex. 1941) (describing the commissioners court as "the general business and contracting agency of the county," which "alone has authority to make contracts binding on the county[] unless otherwise specifically provided by statute"). As such, a matter must involve "county business" for an associated contract to fall within the scope of the commissioners court's constitutional mandate. *See, e.g.*, *Sun Vapor Elec. Light Co. v. Kenan*, 30 S.W. 868, 868 (Tex. 1895) (explaining that "the administration of . . . a dissolved corporation and the payment of its debts are not such business"); *see also, e.g.*, *Glenn v. Dallas Cnty. Bois d'Arc Island Levee Dist.*, 275 S.W. 137, 145 (Tex. App.—Dallas 1923, writ ref'd) (describing "county business" as "matters that are of public concern to the people of the county").

On this backdrop, "[c]ommissioned peace officers in this state have long engaged in the practice of supplementing their incomes as commissioned peace officers by working during their off-duty hours as private security guards." Tex. Att'y Gen. Op. No. GA-0256 (2004) at 1.

---

[3] Brief from Mr. Blake A. Watson, Assistant Fayette Cnty. Att'y, and Mr. Keith Korenek, Fayette Cnty. Sheriff, to Hon. Ken Paxton, Tex. Att'y Gen. at 5 (June 5, 2024) ("Brief") (on file with the Op. Comm.).

Precedent likewise observes that law enforcement officers often engage in private employment, unrelated to their county service, in exchange for compensation. *See, e.g.*, *State ex rel. Hightower v. Smith*, 671 S.W.2d 32, 35 n.1 (Tex. 1984) (distinguishing an official misconduct situation involving the sheriff's use of county equipment for personal gain from "the usual arrangement where an officer agrees to provide off-duty security in return for compensation" (emphasis omitted)); *Watson v. Newman*, 299 S.W.3d 129, 129 (Tex. 2009) (Willett, J., joined by Hecht, J., dissenting) (acknowledging in a dissent to a petition review rehearing denial that "[l]aw-enforcement professionals throughout Texas earn extra money by moonlighting as private security officers" and remarking on the "ubiquity" of the practice).

In fact, a variety of statutes countenance the provision of extracurricular security services by law enforcement officers. The Occupations Code, for example, permits a peace officer to engage in private work "as a patrolman, guard, extra job coordinator, or watchman" without a private security license if, among other things: (1) the recipient of the services or a licensed security guard company directly employs him, regardless of whether the relationship is as employee-employer or on an individual contractual basis; and (2) the officer otherwise works as a paid peace officer for a state or political subdivision for at least thirty-two hours a week with employee benefits. TEX. OCC. CODE § 1702.322(1). The Government Code also endorses private law enforcement work, subject to reasonable conditions adopted by the Texas Department of Public Safety. TEX. GOV'T CODE § 411.0077.

Law enforcement services that involve county business, on the other hand, are separately treated under other statutory provisions. *See, e.g.*, TEX. LOC. GOV'T CODE § 362.002(b) (authorizing the county "by resolution or order of its governing body [to] enter into an agreement with a municipality, joint airport, or county to form a mutual aid law enforcement task force to cooperate in criminal investigations and law enforcement"); TEX. GOV'T CODE §§ 791.011(a), (d)(1) (authorizing local governments to contract with each other to perform governmental functions and requiring such contracts to be "authorized by the governing body of each party to the contract"), 791.003(3)(A) (defining "[g]overnmental functions and services" to include "police protection and detention services"). The same is true of statutes that confer limited authority to enter such contracts into the hands of local law enforcement officials. *See, e.g.*, TEX. GOV'T CODE § 511.012(b) (authorizing agreements between sheriffs regarding the transfer and receipt of prisoners in certain circumstances); TEX. EDUC. CODE § 37.081(a)(2) (authorizing a memorandum of understanding between "a local law enforcement agency" and a school district board of trustees for the provision of school resource officers). But to the extent such contracts fall outside of these limited authorities, the commissioners court traditionally maintains its exclusive power "to make contracts that are binding on the county." *Anderson*, 152 S.W.2d at 1085; *see also, e.g.*, TEX. LOC. GOV'T CODE § 351.04155(a), (b)(2) (specifying when certain contract renewals "are subject to the approval of the commissioners court").

As a result, a law enforcement officer may enter into a private contract for security services—outside of their work for the county—without necessarily implicating "county business" for which the commissioners court is responsible.

**The status of a school district as a political subdivision does not affect its statutory authority to directly contract with law enforcement officers for private-security work.**

An independent school district "is a political subdivision with only those powers assigned to it by the Legislature." *Pecos Cnty. Appraisal Dist. v. Iraan-Sheffield Indep. Sch. Dist.*, 672 S.W.3d 401, 413 (Tex. 2023). The Legislature broadly gives school district trustees "the exclusive power and duty to govern and oversee the management of the public schools of the district." TEX. EDUC. CODE § 11.151(b). In particular, the Legislature authorizes school district trustees to "enter into contracts as authorized" by the Education Code or other law. *Id.* § 11.1511(c)(4). Pursuant to this authority, for example, a school district may enter a memorandum of understanding with a county "that is the employing political subdivision of commissioned peace officers for the provision of school resource officers." *Id.* § 37.081(a)(2) (authorizing school resource officers).

But a "school resource officer" is separately defined in the Occupations Code as "a peace officer *who is assigned by* the officer's employing political subdivision to provide a police presence at a public school," and "[t]he term does not include a peace officer who provides law enforcement at: (1) a public school only for extracurricular activities; or (2) a public school event only for extracurricular activities." TEX. OCC. CODE § 1701.601 (emphasis added). The Education Code likewise distinguishes between a "school resource officer" and "a commissioned peace officer employed *as security personnel*." TEX. EDUC. CODE § 37.0814(b) (emphasis added); *see also, e.g.*, *id.* § 37.081(d)(3) (referencing each independently). The authority to contract for the latter is separately detailed from the authority to contract with a county. *Id.* § 37.081(a)(1); *accord id.* § 37.0814(b)(3) (expressly indicating the same).

Your inquiry, of course, references the independent provision of private-security services by a law enforcement officer—outside of his or her work for the county—for school sporting events. Request Letter at 1–2. An arrangement of this nature does not involve the provision of "school resource officer" services, TEX. OCC. CODE § 1701.601, which would fall within the scope of county business like that subject to a memorandum of understanding between the school district and county itself, TEX. EDUC. CODE § 37.081(a)(2). Private-security arrangements of this nature instead fall within the scope of a school district's statutory authority to separately "employ or contract with security personnel." *Id.* § 37.081(a)(1). Consequently, the status of a school district as a political subdivision does not affect its statutory authority to contract for private-security services provided by law enforcement officers outside of their county duties.

**No statutory provision conditions the provision of private-security services on the presence of a mass gathering of people.**

Occupations Code Chapter 1702 regulates the provision of private-security services. *See* TEX. OCC. CODE §§ 1702.001–.389. As previously mentioned, subsection 1702.322(1) authorizes a peace officer to work "as a patrolman, guard, extra job coordinator, or watchman" without a private security license if certain conditions are met. *Id.* § 1702.322(1). But none of the conditions for the provision of private-security work by a law enforcement officer requires the presence of a mass gathering of people. *See id.*

To be sure, law enforcement officers play a role in ensuring public safety and order at events that qualify as a "mass gathering" under the Texas Mass Gatherings Act. *See* TEX. HEALTH & SAFETY CODE §§ 751.001–.013. The sheriff must investigate and report on preparations for the mass gathering, for example, and he may inspect the event itself and order the correction of any violations of public safety standards prescribed by state and local laws, rules, and orders. *Id.* §§ 751.005(d), .012(c). But even if the deployment of law enforcement officers were to occur during a period of county service, "decisions as to the deployment of law enforcement officers within the county are left to [the sheriff's] discretion and judgment since this matter is not specifically prescribed by law." *Weber v. City of Sachse*, 591 S.W.2d 563, 567 (Tex. App.—Dallas 1979, writ dism'd); *see also, e.g.*, Tex. Att'y Gen. Op. No. KP-0111 (2016) at 3 (citing *Weber* for the proposition that "a commissioners court generally may not interfere with the sheriff's responsibility to deploy law enforcement officers and vehicles").

We thus find no basis to conclude that, under the facts of your request, the provision of private-security services must be conditioned on a mass gathering of people.

## **S U M M A R Y**

Only the commissioners court may generally contract for the authorized provision of law enforcement services involving county business.

Texas law recognizes the practice of law enforcement officers providing private-security services, outside of that provided to a county, for direct compensation.

The status of a school district as a political subdivision does not affect its statutory authority to directly contract for private-security services by a law enforcement officer.

No statute conditions the provision of private-security services on the presence of a mass gathering of people.

Very truly yours,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

JOSHUA C. FIVESON
Chair, Opinion Committee

BECKY P. CASARES
Assistant Attorney General, Opinion Committee